[Criminal No. 948.   Filed January 29, 1945.]

[155 Pac. (2d) 622.]

THE STATE OF ARIZONA, Appellee, v. LEE ALBERT SMITH, Appellant.

Mr. Joe Conway, Attorney General, Mr. Earl Anderson, Assistant Attorney General, Mr. John F. Ross, County Attorney, Mr. I. B. Tomlinson, Deputy County Attorney, and Mr. Norman S. Herring, Chief Deputy County Attorney, for Appellee.

Mr. James A. Struckmeyer, Mr. Dwight Solomon and Mr. Jacob Morgan, for Appellant.

STANFORD, J.—The county from which this case is brought on appeal is one of the border counties of Arizona, bordering on the Republic of Mexico. The

City of Douglas, hereinafter mentioned, is on the border line.

On August 8, 1943, a human body was found under a culvert some seventeen miles from Douglas on Highway 80 which passes through Douglas to New Mexico, running in an easterly and northerly direction. The body was later identified as that of Ed Miller. Some days later Lee Albert Smith, who will hereinafter be called the defendant, as he was styled in the superior court trial, was arrested for the crime of murder of Miller. There was also arrested at the same time his son, John L. Smith. The Smiths lived north of Douglas on a ranch, but were not the owners of the ranch, and had before this time employed the deceased, Ed Miller, and paid but little wage, as the evidence shows. So far as the evidence discloses, the Smith family consisted of the defendant, his wife, his son, and a daughter of his wife by another marriage, and then a child some four or five years of age who was the issue of the marriage of this defendant and his wife. John L. Smith was not the son of the Mrs. Smith with whom the defendant was then living.

Ed Miller told members of the Smith family that he was going to Douglas to live. As to the exact date we are not certain, but it was very close to the date of the killing. The evidence in behalf of the state is about as follows:

On the morning of August 7, 1943, defendant and his son, John L. Smith, left their home in a two seated Ford automobile for Douglas, and found Ed Miller in the edge of Douglas walking to the business center. They picked him up and the evidence disclosed that he was taken out on Highway 80 in the direction of New Mexico. The son, John L. Smith, was driving the car and the father was sitting on the back seat. Miller was sitting on the front seat with the son, and when the car reached a distance of eight or nine miles on

Highway 80, the defendant struck the deceased many times with a claw hammer. The defendant thereupon told the son to drive as fast as the car would go and when they reached a certain culvert, which the evidence shows was approximately seventeen miles from Douglas, the car was stopped upon the culvert, the body was thrown over the end of the culvert, and the defendant cut the throat of deceased and dragged him under the culvert, got back into the car and returned to their home. In the meantime, however, they met some men working on the highway as they were going out, and again met them as they returned.

When defendant and his son were arrested on the 14th day of August, they were on their ranch behind a barn washing the car in question, and had mud in the bottom of the car and over tools.

On August 16, 1943, John L. Smith gave a statement to the county attorney, which was taken down in shorthand and transcribed in a typewritten form, the statement consisting of five typewritten pages. This statement was later introduced as evidence in the trial.

The record shows that on August 18th a complaint and warrant of arrest were issued charging this defendant with murder, and on the 22nd day of August, the defendant was taken before the Justice of the Peace for a preliminary hearing, and when the complaint was read, he stated, "I killed Ed Miller." Thereupon the Justice of the Peace bound the defendant over to the superior court, and, in the superior court he thereafter entered a plea of not guilty, after, however, he had had counsel appointed by the court to defend him. Before that time, however, and after he had read the statement of his son, which had been submitted to him while he was in jail, the defendant wrote out, in his own handwriting, a confession of the killing of deceased, Ed Miller. There was no date stated on the paper.

A verdict of guilty of murder of the first degree was returned in this case by the jury, and under the Arizona law, the jury having the right to set the penalty at life imprisonment or death, the death penalty was fixed.

The first assignment of error submitted by defendant is as follows:

"The court committed prejudicial error in allowing various witnesses to indulge in conjecture and hearsay and to testify as to conclusions arrived at by personal investigation based on hearsay, for the reason that prejudicial evidence was thereby brought to the jury's consideration; more particularly, by allowing all of the witnesses to testify to incompetent but prejudicial facts."

This assignment goes to the evidence in the case, and as we read the opening brief of the defendant we see the contention raised by one of the defendant's outstanding examples whereby he quotes the evidence of an officer at the trial of his case. That officer was Chesley Miller, who was a deputy sheriff. The evidence quoted in defendant's opening brief given at the trial was as follows:

"A. When I arrived at Hot Springs (located in New Mexico) I found that Mr. Miller and his son had been in Hot Springs themselves on a Tuesday morning following—

"Q. Do you mean Miller and his son? A. I mean Mr. Smith, pardon me, had been in Hot Springs both Tuesday and Wednesday. They had been to the house of Edward D. Miller—there was a tent house belonging to the deceased—and had broken in and entered both buildings.

"Q. Did you find any paper that would indicate the name of the owner there? A. I did.

"Q. What were they? A. I picked up an old letter or two that is down in the Sheriff's office, I believe, where this woman showed me this green V-8 car was parked. She told me they carried bundles out of one house and a cardboard box out of the other."

Counsel for defendant on this appeal in relation to such testimony raises this contention:

"The erroneous admission of this evidence was evidently realized by the court, who once did direct the witness, 'Do not testify as to what any one told you, Mr. Miller.'

"Despite the interposed objection of the court, however, no attempt was made to warn the jury or to instruct them to disregard the testimony, and, in effect, the jury could have been led to believe from the conduct of the court, the prosecuting attorney, and of the counsel for defendant, that all the previous testimony was material, relevant, competent, admissible and true."

During the testimony taken of the deputy sheriff, Mr. Miller, we find that several times counsel for defendant objected and the objection was sustained. It is true that in the evidence quoted, and in many other places, there were no objections. Defendant, through his counsel on this appeal, admits that the counsel in the trial court did not object to this evidence, as it can be seen from their remarks above quoted. This court has several times ruled that unless an objection is made that it is not error to permit hearsay evidence to be brought into the case, and in the case of *Sullivan* v. *State of Arizona*, 47 Ariz. 224, 55 Pac. (2d) 312, 315, a murder case also from Cochise County, this court said:

"... At the trial of the case, the only objection made to the admission of this testimony was that it was a confession obtained under a promise of leniency. Nothing was said in the objection about its referring to other crimes committed by the defendant. For this reason alone, the assignment is not good, for an objection to the admission of evidence must state the reason for the objection, and, if it is not objectionable on the ground stated, it is not error for the court to admit it, even though there might be some other proper reason for its rejection not raised by the objection as made. ..."

█ We can see no prejudicial error against the defendant in allowing this evidence.

We quote the second assignment of error of the defendant:

"The court erred prejudicially in admitting into evidence certain photographs, State's Exhibits B and C, in evidence, because the said photographs were calculated to arouse passion and prejudice in the mind of the ordinary person, and were not a true representation of the *res* of the deceased, or of the *corpus delicti.*"

█ Counsel for defendant contend that witnesses M. E. Irwin and Howard Ames were called by the state to prove the taking of photographs of deceased, and also contend:

"Under the guidance of the prosecutor, however, the witnesses went further. Each of them testified from the photographs, over objections, as to what certain marks on the pictures were. (The pictures were not yet in evidence.)"

A careful reading of the evidence shows that at the time of giving this evidence only the preliminary questions had been asked sufficient for the introduction and that before the questions that were objectionable were asked, the pictures were marked in evidence as state's exhibits B and C.

Also as to the admissibility of photographs, we cite the case of *Janovich* v. *State,* 32 Ariz. 175, 256 Pac. 359, 360. From that case we quote:

" . . . On the trial of the case the state proved the identity of the deceased and the nature of the wound by oral testimony, and then attempted to offer in evidence the photograph. To this defendant objected, on the ground that, since neither the identity of the deceased nor the cause of death were in question or would be put in question by him, the photograph was inadmissible, as its only purpose and effect would be to inflame the minds of the jury.

"The county attorney insisted, first, that the state could not be limited in the proof of the identity of the

deceased and the cause of death to oral testimony, but had the right, in addition, to show it by any physical exhibits, including photographs, and, second, since the nature of the wounds might have a bearing on the atrocity of the crime, the jury, which, under the law in Arizona, fixes the penalty in a case of murder in the first degree, had the right to see as well as to hear what their exact character was. . . .

"The only point on which there could have been a difference of opinion was as to the penalty, and we think the photograph in question was proper to go to the jury to assist them in determining whether there were extenuating circumstances as contended by defendant, or the murder was of so atrocious a nature as to merit the severer penalty provided by law."

We are satisfied that the photographs in question and the questions asked of the witnesses pertaining to them were proper.

■ By the next assignment of error defendant complains that the trial court commented on the evidence, and in particular has reference to the following language of the court:

"The Court: Mr. Cunningham, I would grant your motion (to strike) if it were not that the testimony is that this man saw that statement and put his seal of approval on it and said this was true and correct. I can see your point. But you overlook this fact that this statement had the seal of approval of the defendant before it was permitted to go to the jury."

It is the contention of defendant that it is a disputed fact regarding the adoption by the father of the confession of the son, each being in evidence, and the defendant contends that only the jury could determine the matter involved, and defendant cites, mainly, Article 6, Section 12, Constitution of Arizona; *Pfeiffer* v. *State,* 35 Ariz. 321, 278 Pac. 63; *Beasley* v. *State,* 20 Ariz. 237, 179 Pac. 647.

Under the case of Beasley v. State, *supra,* it is our opinion that it is a proper statement by the trial court giving his reason for his ruling.

■ Defendant submits an assignment of error as to the instructions, claiming that "the court presumed and stated that a crime had been committed and that the defendant had committed the crime," and defendant assigns the following instruction as error:

"Gentlemen of the jury, in our state this is an instance where the jurymen have to fix the penalty; that is, in the case of first degree murder. It is either, then, death or life imprisonment, to be fixed by you, gentlemen of the jury."

The defendant cites the following cases in support of the above contention: *Lujan* v. *State,* 16 Ariz. 123, 141 Pac. 706; *Merino* v. *State,* 16 Ariz. 132, 141 Pac. 710; *Gibbs* v. *State,* 37 Ariz. 273, 293 Pac. 976; *Richardson* v. *State,* 34 Ariz. 139, 268 Pac. 615; *Cole* v. *State,* 41 Ariz. 1, 15 Pac. (2d) 238; *Taylor* v. *State,* 55 Ariz. 29, 97 Pac. (2d) 927; *Freeman* v. *State,* 65 Okl. Cr. 40, 82 Pac. (2d) 1072.

We hold that the objectionable instruction above quoted is merely a declaration of the law by the trial judge, and this instruction was given after the Court stated the forms of verdict that would be submitted to the jury and it was necessary and important that the Court should declare the law by explaining the forms of verdict.

Defendant's sixth assignment of error is as follows:

"The court committed prejudicial error by admitting into evidence a purported confession of the defendant, the confession, State's Exhibit E in evidence, not having been identified and being procured illegally and unlawfully."

The defendant in submitting law in this case treats on the subject of three exhibits, State's Exhibit E headed "Why I killed Ed Miller," and signed by the defendant; State's Exhibit F being a statement from John Smith, the son of defendant, who claimed he was with deceased at the time deceased was killed; and a

statement by defendant written as a part of State's Exhibit E, or his confession, but the same, together with a postscript on the first page of the confession, were introduced in evidence as the State's Exhibit E.

Defendant cites the cases of *Crowell* v. *State,* 15 Ariz. 66, 136 Pac. 279, *State* v. *Levice,* 59 Ariz. 472, 130 Pac. (2d) 53, 55. The last case is apparently based in part on the Crowell case cited and had to do with the declarations of a co-conspirator, and from this case we quote the following:

" . . . It appears that the confession signed by Cole contained a statement of a conspiracy by the defendants to kill the deceased Qualls and the defendants contend that since it was made after the object of the conspiracy had been consummated it was not admissible as against the other two defendants. Declarations of a co-conspirator, made in furtherance of the conspiracy, are admissible against another, but those made after the conspiracy is accomplished are not. . . . "

This citation has to do with the statement made by John Smith, and which it is claimed was adopted by the father in his confession. We see no semblance in that case and the one at bar where the confession of the defendant was admitted in evidence.

We quote the following from 20 Am. Jur. § 589:

"An admission made by a party to an action is, of course, admissible against him. On the other hand, the statement of a third person is objectionable as hearsay where offered as proof of the fact asserted, except as it may be within an exception to the rule excluding hearsay. Furthermore, such a statement is not binding upon, or admissible against, a party as original evidence in the nature of an admission inconsistent with his assertion of a cause of action or defense, unless it is made to appear by independent evidence, or otherwise, that the party expressly consented to be bound by the statement of the declarant, . . . "

■ On the subject of the admission in evidence of the confession of the defendant, we quote from the case of *People* v. *Fox,* 25 Cal. (2d) 330, 153 Pac. (2d) 729, 734:

"Although the question as to the admissibility of a confession is, in the first instance, necessarily one of law for the trial judge (*People* v. *Jones,* 24 Cal. (2d) 601, 150 Pac. (2d) 801; *People* v. *Rogers,* 22 Cal. (2d) 787, 141 Pac. (2d) 722), if the evidence is received, 'it is for the jury to determine whether the confession was freely and voluntarily made and therefore entitled to consideration.' *People* v. *Dye,* 119 Cal. App. 262, 270, 6 Pac. (2d) 313, 316."

■ We find from reading the entire evidence that there was no threat or inducement that caused the making of the confession and the statement referred to.

The State's Exhibit E, the confession of defendant, for the purpose of a better understanding of its admission and our holding in this case, is herewith quoted:

"Why I killed Ed Miller Just because he wooden leave my famley along and I let him go and he wouldent stay a way I would send him to work and just as soon as I were gone he would be at the house. He made out like he were sick and stayed at the house 12 days and me and Mr. Sharsha tryed to get him to just to come down and see that the boys would work he sod that he would in a fue days he would go to town and by wine and come bock and go to bed. And wouldent get up in the morning till 10 to 11 OK he sead that he could take any women a way from any one if he wonted to. And I got tired of it I meat him on his way bock out to my ploce and I thought I would stop it so I did I done it for that cause and that what hapened. I killed him with a hamer. And my boy dident have any thing to do with it. I am telling the truth so help me god. he hos ben at ths for about 3 years. But I dident think any thing till about 2 month ago. I sed something to my wife about it and she would get made

at me and woulden talk to me. Sed that he was a nice man.

"so this is all Lee Albert Smith My boy dident have any thing to do with it. I killed him my self.

"so help me god.

"I Lee Smith hear by swear that the statement that the boy made were true and he had nothing to do with it at all I swear the truth and nothing but the truth so help me god.

"Lee Smith"

This confession also gives the reason why the defendant killed Ed Miller. The defendant, when he was approached by the deputy sheriff and others in his yard back of his house before arrest, said this about deceased, according to the testimony of the deputy sheriff:

" . . . We talked to him a little bit. He said a man by the name of Miller had worked for him and left about the last of July or the first of August and went into Douglas and as far as he knew would be in Salt Lake City, Utah, . . . he said he knew him three or four years, he was a very fine man to him and his family. . . . .

"Q. Who cashed this check? A. Ed Miller.

"Q. The deceased? A. The deceased. Had cashed the check for the defendant and Mrs. Harsha. I said I was surprised the man would have that amount of money on him. He said he had more than that. He said, to be exact, he had about $208.00 on him."

█ A further assignment of error was that the view of the automobile by the jury was prejudicial to the defendant and could only give rise to evidence which was not cross-examined. Section 44-1831, our Code, reads as follows:

"*View by jury.*—When, in the opinion of the court. it is proper that the jury should view the place where the offense appears to have been committed, or where any other material facts (fact) appears to have occurred, it may order the jury, in the custody of the proper officer, to be conducted in a body to such place;

and the officers shall be admonished to permit no person to speak to or otherwise communicate with the jury, nor to do so himself, on any subject connected with the trial, and to return them into the courtroom without unnecessary delay, or at a specified time. The trial judge shall be present and the county attorney and counsel for the defendant may be present at the view by the jury.''

In the instant case the trial judge, counsel for defendant, together with other persons interested in the case, went with the jury, and the instruction given at that time, as taken from the transcript of evidence, was as follows:

''The Court: Objection overruled. Mr. Bailiff please come forward. You will be required to take the jury a few steps back of the Court House to the garage where this exhibit is and they are to remain in your custody. You are to allow no one to speak to them about anything concerning this case and at such time as they are through making their observations, you will bring them back into the court room. The counsel for defendant and the County Attorney will be present, as well as the Court, at the examination. Court will adjourn until that time.''

There has been no point raised in this case that any act was done while the view of the jury was taken that would be prejudicial except the one raised by the assignment just above quoted.

We cannot see that the defendant was in anywise prejudiced by the view.

The last assignment of error is that the defendant neither had a preliminary examination nor waived the same and was denied due process under Art. 2, Sec. 30, Arizona Constitution, and Art. 14 of the Amendments to the Federal Constitution. We quote from Art. 2, Sec. 30, Arizona Constitution:

''(*Indictments.*)—No person shall be prosecuted criminally in any court of record for felony or misdemeanor, otherwise than by information or indictment;

no person shall be prosecuted for felony by information without having had a preliminary examination before a magistrate or having waived such preliminary examination.''

The defendant in support of the assignment also submits, among other cases, the cases of *Vincent* v. *State,* 16 Ariz. 297, 145 Pac. 241; *Quen Guey* v. *State,* 20 Ariz. 363, 181 Pac. 175; *Roman* v. *State,* 23 Ariz. 67, 201 Pac. 551.

Sec. 242, 14 Am. Jur., reads as follows:

''*Waiver.*—The right to a preliminary examination to the extent that it is for the benefit of the accused is a personal privilege which he may waive unless prohibited by law. He may manifest a waiver either expressly or by implication. Voluntarily stating to the magistrate, before examination, that he is guilty is an express waiver of the right. . . . ''

In the order by L. T. Frazier, Justice of the Peace in Cochise County, we find this statement: ''Preliminary hearing waived by a plea of guilty.''

It is presumed that other formalities as required by Sec. 44–302, Arizona Code Annotated 1939, and other sections of our Code were complied with. We quote Sec. 44–302, *supra:*

''*Duty of magistrate.*—When the defendant is brought before the magistrate upon an arrest, either with or without a warrant, on a charge of having committed an offense which the magistrate is not empowered to try and determine, the magistrate shall immediately inform him (a) of the charge against him, (b) of his right to the aid of counsel during the preliminary examination, and (c) of his right to waive such examination.''

Also testimony does not disclose that the defendant at his trial in the superior court raised any objection to the manner in which the preliminary hearing was held.

The trial court appointed two attorneys to represent the defendant at the trial of the case in the superior court. The attorneys were Messrs. Starr K. Williams, of Bisbee, and D. L. Cunningham, of Wilcox. Attorney Williams has for a great many years been a practitioner before the courts in this state and has had great experience as a criminal lawyer, and likewise as to Attorney Cunningham, he is a former member of the Supreme Court of our state and besides that has had great experience as a practitioner before the courts of Arizona. Apparently they aided the defendant in the preparation of the notice of appeal to this court, but could take it no further, and this court observing that the defendant was not represented after his appeal had been brought here appointed Messrs. James Struckmeyer and Dwight L. Solomon to represent the defendant on appeal. Later Mr. Jacob Morgan of Phoenix volunteered to assist these two gentlemen. These attorneys have given a great deal of their time and gone to considerable expense in preparing the briefs in this case without compensation and this court feels greatly indebted to them for the masterful manner in which they have presented the case of this defendant.

We have found no error prejudicial to the defendant committed in the conduct of the trial of this case.

Judgment is affirmed.

ROSS, C. J., and LaPRADE, J., concur.