436 P.2d 130

### Applications of Johnnie J. BILLIE and Leroy Jewelryman for a Writ of Habeas Corpus.

### No. 9092–PR.

Supreme Court of Arizona,
In Banc.
Jan. 11, 1968.

Arthur W. Vance, Jr., Window Rock, for petitioners.

Darrell F. Smith, Atty. Gen., Frank A. Parks, James S. Tegart, Asst. Attys. Gen., Phoenix, for respondent.

LOCKWOOD, Justice:

This matter comes before us on a petition to review a decision of Division II of the Court of Appeals on an application for habeas corpus. The only question with which we are concerned is whether the decision of the United States Supreme Court in In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967) is retroactive as affecting the commitment of the two petitioners Johnnie J. Billie and Leroy Jewel-ryman to the Arizona State Industrial School at Fort Grant by the Juvenile Court in Coconino County, Arizona, by orders dated March 9, 1967.

It is undisputed that the commitments were ordered without advising the petitioners or their parents of their right to counsel and that no counsel was employed or provided at the hearing out of which orders for commitment issued.

Prior to the application for habeas corpus in the Court of Appeals, petitioners had made a similar application to the Superior Court in Graham County which petition was denied. The Court of Appeals granted the writ and ordered the release of the petitioners, holding that the opinion, In re Gault, supra, was clearly retroactive in scope so far as the question raised by petitioners is concerned. Because there may be other cases in the same posture and it is important that the question should be decisive in the State, we have granted the petition for review.

In *Gault,* the United States Supreme Court held specifically in the case of an alleged delinquent juvenile, that, in order to sustain a determination of delinquency and commitment to a state institution: (1) the child and his parent or guardian must receive notice of such hearing such as would be deemed constitutionally adequate in a civil or criminal proceeding, including the specific charge or factual allegations to be considered; (2) under the due process clause of the Fourteenth Amendment the child and his parent must be notified of the child's right to be represented by counsel retained by them, or if they are unable to afford counsel that counsel will be appointed to represent the child; (3) the parent and child must be accorded the rights of confrontation and cross examination pursuant to the due process clause of the Fourteenth Amendment, and (4) the privilege against self incrimination guaranteed by the Fifth Amendment is applicable in

the case of juveniles as it is with respect to adults.[1]

The Supreme Court indicated that it recognized certain other problems in juvenile court procedures, including lack of provisions for an appeal, for recording the proceedings, and for making findings or stating the grounds for the juvenile court's conclusions, but it declined to pass upon these questions directly. In re Gault, supra, at 58, 87 S.Ct. 1428.

Because the language in *Gault* emphasized that "due process of law is the primary and indispensable foundation of individual freedom", and that a juvenile court hearing "must measure up to the essentials of due process and fair treatment" in connection with an adjudication of delinquency, it is apparent that the court considered the four areas directly adjudicated to be of such fundamental a nature as to affect the integrity and fairness of the entire proceedings.

The court did not specifically announce whether *Gault* was to be given retrospective or prospective effect. Two apparently opposite views are expressed by the District of Columbia Court of Appeals, In the Matter of Wylie, 231 A.2d 81 (June 1967), and by the Supreme Judicial Court of Massachusetts in Marsden v. Commonwealth, 227 N.E.2d 1 (June 1967).

*Wylie,* supra, involved a youth of 17, who was charged in a juvenile court petition as follows "[he] * * * approached Henry James Jackson, age 13, and struck him in the left eye then grabbed him and asked him for his money." There was a jury trial which resulted in a verdict that the youth Wylie was "involved" and upon this finding he was committed to the National Training School. The juvenile court has jurisdiction of a juvenile who has violated a law, a municipal ordinance, or regulation under the District of Columbia Juvenile Court Code. The Court of Appeals discussed the ruling in *Gault* that a juvenile must be given written notice of the specific charge or factual allegations to be considered at the hearing and that the notice must be timely of the specific issues to be met. It held that the petition in *Wylie* was not sufficient compliance with *Gault* in that the facts as alleged could have been an allegation charging Wylie with violation of robbery, attempted robbery, assault, or that he was charged with violating all three laws. Further, the Court of Appeals held that a verdict of "involved" was too vague and indefinite to satisfy the requirement of due process. The Court in effect gave only prospective effect to *Gault* in one particular, stating specifically: "Our ruling with respect to the *necessity for notice of the specific issues,* specific instructions on such issues, and disapproval of the use of the verdict of involved shall apply only in this case and in trials occurring after this date". (Emphasis supplied.) In the Matter of Wylie, supra, 231 A.2d at 83.

In *Marsden,* supra, the minor was thirteen and a half years old at the time of his commitment to a Massachusetts "Youth Service Board". His mother had reported him to a probation officer who in turn reported to the judge of the municipal court what he had been told by Marsden's mother. Marsden was, according to the record, "a chronic truant," and "his associates were in constant trouble". The hearing before the judge of the municipal court lasted ten minutes. There were present the judge, Marsden, a police officer, a probation officer, and the complainant, Marsden's mother. Marsden did not have counsel, he did not waive counsel, he was not told of any right to counsel. He was adjudged delinquent and committed to the Youth Service Board, and afterward confined at a school for boys for several months. Thereafter he was released to his mother's custody, but was returned for

1. The Supreme Court indicated that this right could be waived under circumstances in which the greatest care is taken to assure that an admission is voluntary in the sense that it has not been coerced or suggested, but also that it is not the product of ignorance of rights or of adolescent fantasy, fright or despair. In re Gault, supra, at 55, 87 S.Ct. 1428.

parole violations to the school for boys. Thereafter he ran away with another boy, using an automobile without authority and was returned to the school. In December of 1966 the Youth Service Board held a hearing for possible parole and Marsden was represented by appointed counsel. The Board refused parole and transferred Marsden to the maximum security facility for juveniles. Upon an appeal by writ of error to review his confinement, the Supreme Judicial Court of Massachusetts held that in a "stubborn child proceeding" where the parent is the complainant, the child does not receive independent representation from his parent and that without counsel he would have to rely primarily for protection and assistance upon the judge or a social worker or probation officer who might be appointed. The Supreme Judicial Court of Massachusetts held that although before *Gault,* the procedure in juvenile proceedings in that state did not afford counsel to a juvenile, and that the judge of the municipal court in 1965 could not have foreseen the *Gault* decision, nevertheless, since Marsden was not "effectively afforded the right to counsel to which he was entitled under the *Gault* decision" he was entitled to have the determination of delinquency set aside and to receive a new hearing in municipal court. Marsden v. Commonwealth, supra, 227 N.E.2d at 3. Apparently Massachusetts considers the rulings in *Gault* retrospective.

In view of the fact that the question of whether *Gault* must be given retroactive application in all its aspects has not been specifically settled by the Supreme Court of the United States, we will determine the question here by examining those guidelines which the Court has already enunciated to test prospective or retrospective meaning.

Three leading cases in which the Supreme Court of the United States has indicated guidelines for determining the ret-rospective or prospective effect of its decisions are Linkletter v. Walker, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965); Tehan v. United States ex rel. Shott, 382 U.S. 406, 86 S.Ct. 459, 15 L.Ed.2d 453 (1966); and Johnson v. State of New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966). In *Linkletter* the court stated that the Federal Constitution neither prohibits nor requires a retrospective effect, and that in appropriate cases a court might in the interest of justice make its ruling prospective in a constitutional area where the exigencies of the situation require such application. It held that in determining whether to give its decision prospective or retrospective effect a court must weigh the merits and demerits in each case by looking to the prior history of the rule in question, its purpose and effect and whether retrospective operation will further or retard its operation. The court specified that its former ruling in *Mapp* [2] was to be considered prospective only since the prime purpose of the holding in that case was "effective deterrent against lawless police action" in unlawful obtaining of evidence. The Court stated that the misconduct of police prior to *Mapp* had already occurred and would not be corrected by releasing prisoners who had been convicted prior to the court's decision in *Mapp* by the use of unlawfully obtained evidence, and that the "ruptured privacy of the victims home and effects" could not be restored, and that reparation would come too late. Linkletter v. Walker, supra, 381 U.S. at 637, 85 S.Ct. at 1742.

*Tehan* involved a criminal trial of a defendant in Ohio who had been convicted of violating the Ohio Securities Act, in which trial the prosecutor had commented extensively on the defendant's failure to testify. Previously the United States Supreme Court had held [3] that it was unconstitutional for a prosecutor or trial judge to make adverse comment upon a defendant's failure

2. Mapp v. Ohio, 367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081, 84 A.L.R.2d 933 (1961).

3. Griffin v. State of California, 380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106 (1965).

to testify in a state criminal trial. The question involved in *Tehan* was whether in this respect *Griffin* was to be applied retrospectively or prospectively. The Supreme Court held that it was to have prospective application only in cases in which the judgment had been rendered, the availability of appeal exhausted, and the time for petition for certiorari elapsed or a petition for certiorari finally denied, all before the date of the Griffin decision. In discussing the reason for the prospective application, the court stated:

> "The basic purpose of a trial is the determination of truth, and it is self-evident that to deny a lawyer's help through the technical intricacies of a criminal trial or to deny a full opportunity to appeal a conviction because the accused is poor is to impede that purpose and to infect a criminal proceeding with the clear danger of convicting the innocent."

> \* \* \* \* \* \*

> "The same can surely be said of the wrongful use of a coerced confession."

> \* \* \* \* \* \*

> "By contrast, the Fifth Amendment's privilege against self-incrimination is not an adjunct to the ascertainment of truth. That privilege, like the guarantees of the Fourth Amendment, stands as a protection of quite different constitutional values—values reflecting the concern of our society for the right of each individual to be let alone. To recognize this is no more than to accord those values undiluted respect." Tehan v. United States ex rel. Shott, supra, 382 U.S. at 416, 86 S.Ct. at 465.

The court further held that since at least several states had relied in good faith upon the constitutionality of laws permitting comments upon a defendant's failure to take the stand in a criminal case, that "a retrospective application of Griffin v. [State of] California would create stresses upon the administration of justice more concentrated but fully as great as would have been created by a retrospective application of Mapp". Tehan v. United States ex rel. Shott, supra at 418, 86 S.Ct. at 466.

In *Johnson*, supra, a case involving a conviction for murder, the petitioners raised the question of retrospective application of the Supreme Court's decisions in *Escobedo*[4] and *Miranda*.[5]

The court held that its decisions in *Escobedo* and *Miranda* were applicable only to those cases in which trial began after the decisions were announced. In discussing the criteria for determining whether its cases should be given prospective or retrospective application the Supreme Court said:

> "In each instance we concluded that retroactive application was justified because the rule affected 'the very integrity of the fact-finding process' and averted 'the clear danger of convicting the innocent'.

> \* \* \* \* \* \*

> "We here stress that the choice between retroactivity and nonretroactivity in no way turns on the value of the constitutional guarantee involved.

> \* \* \* \* \* \*

> "We also stress that the retroactivity or nonretroactivity of a rule is not automatically determined by the provision of the Constitution on which the dictate is based. Each constitutional rule of criminal procedure has its own distinct functions, its own background of precedent, and its own impact on the administration of justice, and the way in which these factors combine must inevitably vary with the dictate involved. Accordingly as *Linkletter* and *Tehan* suggest, we must determine retroactivity 'in each case' by looking to the peculiar traits of the specific 'rule in question.'

> \* \* \* \* \* \*

> "Finally, we emphasize that the question whether a constitutional rule of criminal procedure does or does not en-

---

4. Escobedo v. State of Illinois, 378 U.S. 478, 84 S.Ct. 1758, 12 L.Ed.2d 977 (1964).

5. Miranda v. State of Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

hance the reliability of the fact-finding process at trial is necessarily a matter of degree. We gave retroactive effect to Jackson v. Denno, supra, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908, because confessions are likely to be highly persuasive with a jury, and if coerced they may well be untrustworthy by their very nature. On the other hand, we denied retroactive application to Griffin v. State of California, supra, despite the fact that comment on the failure to testify may sometimes mislead the jury concerning the reasons why the defendant has refused to take the witness stand. We are thus concerned with a question of probabilities and must take account, among other factors, of the extent to which other safeguards are available to protect the integrity of the truth-determining process at trial.

\* \* \* \* \* \*

"Thus while *Escobedo* and *Miranda* provide important new safeguards against the use of unreliable statements at trial, the nonretroactivity of these decisions will not preclude persons whose trials have already been completed from invoking the same safeguards as part of an involuntariness claim.

\* \* \* \* \* \*

"At the same time, retroactive application of *Escobedo* and *Miranda* would seriously disrupt the administration of our criminal laws. It would require the retrial or release of numerous prisoners found guilty by trustworthy evidence in conformity with previously announced constitutional standards. Prior to *Escobedo* and *Miranda*, few states were under any enforced compulsion on account of local law to grant requests for the assistance of counsel or to advise accused persons of their privilege against self-incrimination." Johnson v. State of New Jersey, supra at 384 U.S. 727–731, 86 S.Ct. 1778–1780.

The tone of the language in *Gault* is a clear tocsin that proceedings in juvenile court to determine delinquency which may result in depriving the juvenile of his liberty by commitment to an institution must observe the same principles of due process and fair treatment which are held imperative in a criminal trial of an adult. It appears to us that the touchstone of its application is the statement that retroactive application will be justified when the rule "affects the very integrity of the fact finding process and averts the clear danger of convicting the innocent." [6]

In discussing the right of a juvenile to counsel, the Court said:

"A proceeding where the issue is whether the child will be found to be 'delinquent' and subjected to the loss of his liberty for years is comparable in seriousness to a felony prosecution. The juvenile needs the assistance of counsel to cope with problems of law, to make skilled inquiry into the facts, to insist upon the regularity of the proceedings, and to ascertain whether he has a defense and to prepare and submit it.

\* \* \* \* \* \*

"We conclude that the Due Process Clause of the Fourteenth Amendment requires that in respect of proceedings to determine delinquency which may result in commitment to an institution in which the juvenile's freedom is curtailed, the child and his parents must be notified of the child's right to be represented by counsel retained by them, or if they are unable to afford counsel, that counsel will be appointed to represent the child." In re Gault, supra at 387 U.S. 36, 41, 87 S.Ct. 1448, 1451.

In its discussion of a juvenile's rights under the privilege against self-incrimination guaranteed by the Fifth Amendment, by remaining silent, the Court stated that this constitutional privilege "is applicable in the case of juveniles as it is with respect to

**6.** For a significant analysis of retroactivity of constitutional decisions see, Retroactivity of Constitutional Decisions, 41 Notre Dame Lawyer 206 (1965–66).

adults". In re Gault, supra at 55, 87 S.Ct. at 1458. Mr. Justice Fortas then recognizes that this privilege may be waived, but cautions that without "the participation of counsel * * * the greatest care must be taken to assure that the admission was voluntary, in the sense not only that it was not coerced or suggested, but also that it was not the product of ignorance of rights or of adolescent fantasy, fright or despair". Id. The Court cites Jackson v. Denno, 378 U.S. 368, 84 S.Ct. 1774, 12 L.Ed.2d 908 (1964), which was given retroactive application.

In dealing with the question of adequate notice, and the right to confrontation and cross-examination of witnesses, the Court in Gault emphasized that failure to afford each of these rights to a juvenile would be violation of the Due Process Clause, and that although the proceedings need not conform in all respects to requirements of a criminal trial, yet the "hearing must measure up to the essentials of due process and fair treatment".

■ In passing, we note that because of the shortness of the interval in which juveniles committed to the Industrial School at Fort Grant are actually held there, we cannot say that in Arizona a retroactive application of the Gault rulings will "seriously disrupt the administration" of the juvenile court laws. Seldom are youths committed to the Industrial School retained there over six months, and neither are they retained after age 18, while females committed to a juvenile institution are seldom retained beyond a year, and in any event, are usually released upon attaining the age of 18 years. We take judicial notice of these facts, although the statute [7] confers authority on the juvenile court to commit a child to a juvenile institution "for the term of the child's minority, unless sooner dis-

charged by the board of directors of state institutions for juveniles".

The thrust of Gault appears clearly in the author's diatribe against the failure of the juvenile court system to achieve its high principles of treatment and rehabilitation, rather than punishment of delinquent children. In rejecting the social absolutism of parens patriae in such cases, Gault emphasizes that in practice the juvenile court proceedings must afford strict judicial protection against an arbitrary exercise of authority under a false aegis of social expediency.

■ We conclude, therefore, that since the Supreme Court determined that the same protection of due process afforded adults under the Fourteenth Amendment applies to children in juvenile court proceedings, that Court intended to achieve the same retrospective effect in cases of all children whose delinquency adjudication and commitment had been accomplished without regard to compliance with the rules established in Gault.

■ Nevertheless, upon issuance of the writ of habeas corpus in a proceeding attacking the legality of detention in a juvenile institution by virtue of failure of due process under Gault, the juveniles should be returned to the jurisdiction of the Juvenile Court, for such further proceedings as are appropriate.

Decision of the Court of Appeals is vacated and it is ordered that petitioners be released from custody of the State Industrial School and be returned to the jurisdiction of the Juvenile Court, for such further proceedings as are appropriate.

McFARLAND, C. J., UDALL, V. C. J., and STRUCKMEYER and BERNSTEIN, JJ., concur.

7. A.R.S. § 8–236, subsec. B (1956).