489 P.2d 254

The STATE of Arizona, Appellee,
v.
Gordon R. MARTIN, Appellant.
No. 2097.

Supreme Court of Arizona,
In Banc.
Oct. 5, 1971.

Gary K. Nelson, Atty. Gen. by Carl Waag, former Asst. Atty. Gen., Phoenix, for appellee.

Ross P. Lee, Public Defender by James H. Kemper, Deputy Public Defender, Phoenix, for appellant.

UDALL, Justice:

Defendant, Gordon R. Martin, was found guilty by a jury of robbery and was sentenced to a term of not less than 25 nor more than 30 years in prison. The offense of which Martin was convicted consisted of the robbery of a U–Totem market in Mesa. We granted Martin's motion to take a delayed appeal. For the reasons advanced below, the judgment of the trial court is reversed and remanded.

The facts of the case which are relevant to the determination of this appeal are as follows: On April 29, 1962, at about 9:30 in the evening, defendant Martin and a friend, Roger Carl Acton, entered the U–Totem Market at 1605 W. 4th Avenue in Mesa after assuring themselves that no one was in the store except the attendant. Martin attracted the attention of the attendant, Edward McDaniels, while Acton sneaked up behind McDaniels and hit him on the back of the head with a hammer. McDaniels crumpled to the floor; the two men grabbed his wallet and the cash drawer out of the cash register and ran out of the store. They got into McDaniels' car, apparently with the intention of using it as a get-away car, but discovered that the key was not in the ignition. Acton ran back into the store to try to find the key but saw a customer driving up in front of the store, so turned and ran back to the car outside. The two men took the cash contained in the cash drawer and wallet— about $215. They left the empty cash drawer and wallet on the seat of McDaniels' car and took off running across a vacant field to where their car was parked. They headed toward Scottsdale and on the way stopped at a gas station and changed clothes. They then headed out of town and drove to California.

A criminal complaint was filed the next day, April 30, charging Martin and Acton with the offense of robbery. Thereafter, Martin and Acton were apprehended in San Diego. Two Mesa police officers traveled to San Diego and brought both men back to Mesa on May 2, 1962. Martin and Acton were tried jointly before a jury in July, 1962. Each was represented by counsel. The State called as witnesses several people who were at or near the U–Totem Market just before or just after the robbery and who had seen Martin and Acton. The State also called Edward McDaniels, the attendant on duty at the time, as well as the police officers who investigated the robbery. The defense presented no witnesses and neither Martin nor Acton took the stand. The jury returned a verdict finding Martin and Acton guilty of robbery, and they were thereafter sentenced.

The issues raised by defendant Martin on appeal can be summarized as follows:

I. *Taking Testimony at Hospital.* Martin contends that it was prejudicial error for the trial court to transport the defendants, attorneys, jury, and court personnel to a hospital where testimony was taken of the U–Totem attendant, Edward McDaniels, who was still recovering from the injuries inflicted at the time of the robbery.

II. *Assistance of Counsel.* Defendant argues that he was denied his constitutional right to the effective assistance of counsel because he was not represented by counsel at the preliminary hearing.

III. *Use of Co-defendant's Confession.* Martin contends that it was error for the trial court to admit as evidence the incriminating confession of the co-defendant, Acton, where Acton did not take the stand at trial.

VI. *Due Process and the Remand Hearing.* Martin argues that he was denied due process of law when he was remanded for prosecution as an adult as the result of a hearing of which he had no notice and at which he was not present and was not represented by counsel.

V. *Finding of Voluntariness.* Defendant argues that the trial court failed to make an adequate preadmission finding that his confession was voluntary.

## I. TAKING TESTIMONY AT HOSPITAL

Martin contends it was prejudicial error for the trial court to transport the defendants, attorneys, jury and court personnel to a hospital where testimony was taken of the U–Totem attendant, Edward McDaniels, who was still recovering from the injuries inflicted at the time of the robbery.

We find this contention by defendant Martin to be without merit. The purpose of allowing the jurors to view the evidence introduced is to enable them to comprehend more clearly that evidence. We have consistently held that it is within the trial court's discretion to allow the jurors, with proper precautions, to view the scene of the crime or to view an exhibit which, because of size or immobility, cannot be transported to the courtroom. State v. Prewitt, 104 Ariz. 326, 452 P.2d 500 (1969); State v. Smith, 62 Ariz. 145, 155 P.2d 622 (1945). See also Rule 265, Rules of Criminal Procedure, 17 A.R.S. It is the court's duty in so exercising its discretion to weigh the danger of prejudice against the probative value of the evidence. State v. Beers, 8 Ariz.App. 534, 448 P.2d 104 (1968).

In the instant case the evidence involved was the testimony of a witness rather than the viewing of an object or place; however, under the circumstances of this case the above principles nevertheless apply. During the course of the robbery, Edward McDaniels was hit on the top of the head with considerable force with a blunt instrument, resulting in serious injury. He had been in the hospital ever since the robbery and was still there at the time of trial. The State submitted to the trial court an affidavit from McDaniels' physician that McDaniels could not be transported to the courthouse to testify. The testimony of this witness was essential to the case. The trial court took all necessary precautions in transporting the jury and the others to the hospital and in conducting the proceedings while there, including having McDaniels moved to a special ward for the taking of testimony so as to minimize any possible prejudicial influences which might result from a hospital atmosphere.

In the instant case, the trial court acted within its sound discretion in granting the request of the State to take the testimony of the witness at the hospital. The probative value of the evidence far outweighed any possible danger of prejudice to the rights of the defendant. We, therefore,

hold that Martin's contention of prejudicial error is without merit.

## II. ASSISTANCE OF COUNSEL

Defendant argues that he was denied his constitutional right to the effective assistance of counsel because he was not represented by counsel at the preliminary hearing. In support thereof he relies on Coleman v. Alabama, 399 U.S. 1, 90 S.Ct. 1999, 26 L.Ed.2d 387 (1970), wherein the U. S. Supreme Court held that the preliminary hearing is a critical stage of a criminal prosecution and that an accused is, therefore, entitled to the effective assistance of counsel at such hearing. The instant case was tried in July, 1962, almost eight years before Coleman v. Alabama, supra, was handed down. We are, therefore, confronted with the question of what retroactive effect that decision has on defendant Martin's rights. This same issue was before us in State v. Riley, 106 Ariz. 318, 475 P.2d 932 (1970). In that opinion we reviewed the guidelines set forth in Johnson v. New Jersey, 384 U.S. 719, 86 S.Ct. 1772, 16 L.Ed.2d 882 (1966), for determining whether a decision is to be given retroactive application. In Johnson v. New Jersey, the U. S. Supreme Court applied the aforementioned guidelines to the Miranda and Escobedo decisions, and concluded that:

> "[R]etroactive application of Escobedo and Miranda would seriously disrupt the administration of our criminal laws. It would require the retrial or release of numerous prisoners found guilty by trustworthy evidence in conformity with previously announced constitutional standards.
>
> \*   \*   \*   \*   \*   \*
>
> "In the light of these various considerations, we conclude that Escobedo and Miranda, like Mapp v. Ohio [367 U.S. 643, 81 S.Ct. 1684, 6 L.Ed.2d 1081], supra, and Griffin v. California [380 U.S. 609, 85 S.Ct. 1229, 14 L.Ed.2d 106], supra, should not be applied retroactively. \*   \*   \*" 384 U.S. 719 at 731–732, 86 S.Ct. 1772 at 1780, 16 L.Ed.2d 882 at 891.

In applying the principles set forth in Coleman and Johnson v. New Jersey to the issues raised in State v. Riley, we concluded that the holdings set forth in Coleman should not be applied retroactively.

From the above, we hold that Coleman v. Alabama has no application to the instant case. Even if it did, defendant Martin has made no showing as to how the failure to have counsel at his preliminary hearing prejudiced his cause in any way, and our review of the reporter's transcript of the preliminary hearing has revealed no such prejudice. We accordingly hold that the failure to have counsel at Martin's preliminary hearing in 1962 did not constitute a denial of his constitutional right to the effective assistance of counsel, and hence there was no reversible error.

## III. USE OF CODEFENDANT'S CONFESSION

Martin contends that it was error for the trial court to admit into evidence the incriminating confession of his co-defendant, Acton, where Acton did not take the stand at the trial. As authority, Martin cites Bruton v. United States, 391 U.S. 123, 88 S.Ct. 1620, 20 L.Ed.2d 476 (1968). Therein, petitioner Bruton and a co-defendant, Evans, were tried jointly before a jury and were both convicted of armed postal robbery. During the trial a postal inspector testified that Evans had orally confessed to him that Evans and Bruton committed the robbery. The trial court instructed the jury that although Evans' confession was competent evidence against Evans it was inadmissible hearsay against Bruton and, therefore, had to be disregarded in determining Bruton's guilt or innocence. The Supreme Court held that the admission of the co-defendant's confession that implicated the defendant [Bruton] at the joint trial was prejudicial error, even though the trial court gave clear, concise, and understandable instructions that the confession could be used only against the co-defendant and had to be disregarded with respect to the defendant. The underlying reason behind the holding of prejudi-

cial error was that the admission of the co-defendant's extra-judicial confession under these circumstances violated the defendant's right of cross-examination secured by the Confrontation Clause of the Sixth Amendment.

In Roberts v. Russell, 392 U.S. 293, 88 S.Ct. 1921, 20 L.Ed.2d 1100 (1968), the Supreme Court held that the principles enunciated in Bruton v. United States were retroactive and applied to both federal and state cases. Hence, the holding of *Bruton* is applicable to the instant case.

■ The facts in Roberts v. Russell were parallel to those in Bruton v. United States, except that *Bruton* involved a federal prosecution and *Roberts* a state prosecution. As we understand the cases, in neither case was there any evidence presented at the joint trial as to a confession by the *defendant* [i. e., the petitioner before the Supreme Court]; rather, the evidence as to confessions related only to the alleged confession of the *co-defendant*. In the instant case, however, evidence was presented as to the confessions of *both* defendant Martin and his co-defendant, Acton. The content of the confessions was substantially identical and there were no significant contradictions, or conflicts between, the two confessions. There was nothing in Acton's confession which enlarged upon Martin's own confession. Martin was as thoroughly incriminated before Acton's confession was introduced into evidence as he was after. Under these circumstances, we believe the holding in Harrington v. California, 395 U.S. 250, 89 S.Ct. 1726, 23 L.Ed.2d 284 (1969), is applicable. That decision arose out of a murder trial in a California state court in which confessions of the petitioner's three co-defendants were introduced in evidence, with limiting instructions that the jury was to consider each confession only against the confessor. One of the co-defendants testified and was cross-examined by the petitioner's attorney, but the other two co-defendants did not testify. Petitioner was convicted of murder. The U. S. Supreme Court held that the use of the confessions of the co-defendants who did not testify amounted, under Bruton v. United States, to a denial of the petitioner's constitutional right of confrontation. However, the Court continued, the evidence supplied through such confessions was merely cumulative and the other evidence against the petitioner was so overwhelming that the Court could conclude beyond a reasonable doubt that this denial of the petitioner's constitutional rights constituted harmless error. The opinion, authored by Mr. Justice Douglas, first stated that:

"We held in Chapman v. California, 386 U.S. 18, 87 S.Ct. 824, 17 L.Ed.2d 705, 24 A.L.R.2d 1065, that 'before a federal constitutional error can be held harmless, the court must be able to declare a belief that it was harmless beyond a reasonable doubt.'" 395 U.S. at 251, 89 S.Ct. at 1727; 23 L.Ed.2d at 286.

The opinion then reviewed the facts of the case as related to the admission of the confessions of the co-defendants at the trial. Based on these facts, the Court reached the following conclusion:

*"[W]e conclude that on these special facts the lack of opportunity to cross-examine Cooper and Bosby constituted harmless error under the rule of Chapman.*

*"* * * Their evidence, supplied through their confessions, was of course cumulative. But apart from them the case against Harrington was so overwhelming that we conclude that this violation of Bruton was harmless beyond a reasonable doubt,* unless we adopt the minority view in Chapman (386 U.S. at 42–45 [87 S.Ct. at 836–838], 17 L.Ed.2d at 720–723) that a departure from constitutional procedures should result in an automatic reversal, regardless of the weight of the evidence.

"It is argued that we must reverse if we can imagine a single juror whose mind might have been made up because of Cooper's and Bosby's confessions and who otherwise would have remained in

doubt and unconvinced. We of course do not know the jurors who sat. Our judgment must be based on our own reading of the record and on what seems to us to have been the probable impact of the two confessions on the minds of an average jury. We admonished in Chapman, 386 U.S. at 23 [87 S.Ct. at 827], 17 L.Ed.2d at 710, against giving too much emphasis to 'overwhelming evidence' of guilt, stating that constitutional errors affecting the substantial rights of the aggrieved party could not be considered to be harmless. By that test we cannot impute reversible weight to the two confessions.

"We do not depart from Chapman; nor do we dilute it by inference. We reaffirm it. We do not suggest that, if evidence bearing on all the ingredients of the crime is tendered, the use of cumulative evidence, though tainted, is harmless error. Our decision is based on the evidence in this record. *The case against Harrington was not woven from circumstantial evidence. It is so overwhelming that unless we say that no violation of Bruton can constitute harmless error, we must leave this state conviction undisturbed.*" [Emphasis added.] 395 U.S. at 253–254, 89 S.Ct. at 1728, 23 L.Ed.2d at 287–288.

As stated earlier, in the instant case there was nothing in Acton's confession which enlarged upon Martin's own confession. Martin was as thoroughly incriminated before Acton's confession was introduced into evidence as he was after. The case against Martin was so overwhelming that we conclude, under Harrington v. California, supra, that the use of Acton's confession was harmless error.

## IV. DUE PROCESS AND THE REMAND HEARING

Martin argues that he was denied due process of law when he was remanded for prosecution as an adult as the result of a hearing of which he had no notice and at which he was not present and was not represented by counsel.

The robbery involved in this case was committed on April 29, 1962, at which time Martin lacked six weeks of being 18 years of age. On May 1, 1962, a hearing was held pursuant to Article 6, § 15, Constitution of Arizona, A.R.S., to determine whether to suspend criminal prosecution; inquiry into the facts was made and the Juvenile Court judge determined that Martin was to be prosecuted as an adult. At the time of the hearing, Martin was still in California where he and Acton had fled after the robbery. Martin contends, that he was denied due process of law when he was remanded for prosecution as an adult as a result of a hearing of which he had no notice, and at which he was not present and was not represented by counsel. He argues that under these circumstances the remand hearing did not comport with the requirements enunciated by the United States Supreme Court in Kent v. United States, 383 U.S. 541, 86 S.Ct. 1045, 16 L. Ed.2d 84 (1966) and In re Gault, 387 U.S. 1, 87 S.Ct. 1428, 18 L.Ed.2d 527 (1967).

In the Kent case, the District of Columbia Juvenile Court entered an order waiving its exclusive jurisdiction and authorizing the petitioner, Morris Kent, to be criminally prosecuted in the District Court. The Juvenile Court had failed to grant or to rule on motions by Kent's attorney that a hearing be held and that he be given access to Kent's social records and probation reports. The Supreme Court held that because of the Juvenile Court's failure to grant a hearing, to give counsel access to the records requested, and to state reasons for its order waiving jurisdiction, the order was invalid.

In the Gault decision, the Supreme Court held that juvenile delinquency proceedings which may lead to commitment in a state institution must measure up to the essentials of due process and fair treatment, including the right to counsel, the right against self-incrimination, the right to confrontation and cross-examination, and the right to adequate notice of the nature of the charges.

The remand or "waiver"-type hearing in the instant case was held in May, 1962, about four years before the *Kent* decision was handed down and about five years before *Gault* was decided. We, therefore, must determine whether those decisions have any retroactive effect on Martin's rights.

In Application of Billie, 103 Ariz. 16, 436 P.2d 130 (1968), this Court held that *Gault* was to have limited retroactive application, restricting retroactivity to situations of "delinquency adjudication and commitment" proceedings, 103 Ariz. at 22, 436 P.2d at 136.

The instant case does not involve a "delinquency adjudication and commitment"; hence, we do not consider the *Billie* decision controlling. Rather, we are here concerned with a remand hearing similar in nature to the "waiver"-type hearing involved in *Kent.* In Eyman v. Superior Court In and For County of Pinal, 9 Ariz. App. 6, 448 P.2d 878 (1968), Judge Molloy, speaking for the Court of Appeals of Arizona, provides a comprehensive analysis of the question of whether *Gault* should be applied retroactively to such hearing. He cites a number of jurisdictions which have declined to apply *Gault* retroactively in such a situation. In In re Harris, 67 Cal. 2d 876, 64 Cal.Rptr. 319, 434 P.2d 615 (1967), Chief Justice Traynor, speaking for the Supreme Court of California stated:

"Retroactive application of *Kent* would 'seriously disrupt' the administration of justice. (Johnson v. State of New Jersey (1966) 384 U.S. 719, 731, 86 S.Ct. 1772, 16 L.Ed.2d 882.) Judgments of conviction entered following waiver of juvenile court jurisdiction and final before *Gault* was decided 'threaten to be of significant quantity'. [Citations omitted.] Moreover, many of the defendants convicted after remand for criminal proceedings have become adults and are no longer subject to juvenile court jurisdiction. * * *

"Moreover, the waiver of juvenile court jurisdiction has always been subject to review in subsequent proceedings in which the defendant was represented by counsel. [Citations omitted.] *Only in those cases in which he could have induced the juvenile court to exercise its discretion differently might counsel have affected the result. Finally, since a defendant has always had the right to counsel in the criminal proceedings, denials of that right in the juvenile courts have not resulted* in convicting the innocent." [Emphasis added.] 64 Cal.Rptr. at 321–322, 434 P.2d at 617–618.

■ While *Billie* is not controlling in the case at bar, since this case does not involve a "delinquency adjudication and commitment", we are now of the opinion that *Gault* should no longer have any retroactive application and, in this respect only, our holding in *Billie* is hereby overruled. Also, since we are in complete agreement with the reasoning of In re Harris, supra, we, therefore, reject the proposition that *Kent* be given retroactive application.

■ While so holding, we feel that the trial court's failure to notify Martin of the remand hearing and to insure his presence at said hearing constituted a denial of due process. Such star chamber-like procedures cannot be condoned, nor will they be tolerated. We feel, therefore, that basic concepts of fundamental fairness, essential to the very concept of justice, require reversal. Since Martin is now over 21 years of age the Juvenile Court no longer has any jurisdiction over him. We, therefore, remand this case to the trial court for a hearing to determine whether the Juvenile Court justifiably waived its jurisdiction and permitted defendant to be tried as an adult. Should the court find that the Juvenile Court properly waived its jurisdiction, we believe defendant should be granted a new trial. But, should the Court find that the Juvenile Court improvidently waived its jurisdiction and allowed defendant to be tried as an adult, defendant's

conviction is to be vacated and the information dismissed.

## V. FINDING OF VOLUNTARINESS

Defendant's contention that the trial court erred to his prejudice in failing to make an adequate pre-admission finding that his confession was voluntarily entered need not be discussed herein, since defendant will be accorded a new hearing on the voluntariness of his confession should retrial become necessary.

Reversed and Remanded with Instructions.

STRUCKMEYER, C. J., HAYS, V. C. J., and LOCKWOOD and CAMERON, JJ., concur.