514 P.2d 709

Edgar D. YAUCH and Leota J. Porter,
Petitioners,

v.

STATE of Arizona et al., CITY OF TUCSON,
Pima County, Arizona, the Real Party
in Interest, Respondents.

No. 11173–PR.

Supreme Court of Arizona,
In Banc.

Sept. 20, 1973.

John W. Ross, Jr., Tucson, for petition-
ers.

Herbert E. Williams, Tucson City Atty.
by William E. Hildebrandt, Tucson City
Prosecutor, Tucson, for respondents.

Messing, Hirsh & Franklin, P. C. by
Robert J. Hirsh, George J. Feulner, Jr.,
Tucson, amicus curiae.

STRUCKMEYER, Justice.

This cause originated as a petition for special action in the Court of Appeals, Division 2. Petitioners were charged and convicted in the city court of Tucson with violating four of its ordinances. They appealed to the Superior Court of Pima County and, after the judge presiding therein denied petitioners' motion to dismiss, this action in the Court of Appeals was brought to declare the four ordinances unconstitutional. Opinion of the Court of Appeals, 19 Ariz.App. 175, 505 P.2d 1066, vacated and the ordinances declared constitutional in their entirety.

The ordinances in question, being, respectively, 11–25.1 through 11–25.4, were enacted in 1967. Ordinance 11–25.1 requires that any female entertaining or performing, or serving food or spirituous liquors in any restaurant, bar, nightclub, cabaret and other enumerated establishments be costumed in such a manner that the nipples and aureola are firmly covered by fully opaque material. Ordinance 11–25.3 provides that any person entertaining or performing or serving food or spirituous liquors in such establishments be costumed in such a manner that the lower part of the torso, consisting of the private parts and anal cleft are fully covered by opaque material. Ordinances 11–25.1 and 11–25.3 read:

"Sec. 11–25.1. Clothing requirements of certain female entertainers and waitresses.

Any female entertaining or performing any dance or in any play, exhibition, show or other entertainment, or any female serving food or spiritous [sic] liquors as defined by Title 4, Chapter 1, Article 1, Arizona Revised Statutes, 1956, as amended, in a restaurant, nightclub, bar, cabaret, tavern, tap room, theater, or in a private, fraternal, social, golf or country club, as defined by Title 4, Chapter 1, Article 1, Arizona Resised Statutes, 1956, as amended, or in any public place, who appears clothed, costumed, unclothed or uncostumed in such

a manner that the nipple and the aureola (the more darkly pigmented portion of the breast encircling the nipple) are not firmly covered by a fully opaque material, is guilty of a misdemeanor. (Ord. No. 3053, § 1, 10–16–67)

Sec. 11–25.3. Clothing requirements of certain dancers, etc.

Any person entertaining or performing any dance or in any play, exhibition, show or other entertainment, or any person serving food or spirituous liquors as defined by Title 4, Chapter 1, Article 1, Arizona Revised Statutes, 1956, as amended, in a restaurant, nightclub, bar, cabaret, tavern, tap room, theater, or in a private, fraternal, social, golf or country club, as defined by Title 4, Chapter 1, Article 1, Arizona Revised Statutes, 1956, as amended, or in any public place, who appears clothed, costumed, unclothed or uncostumed in such a manner that the lower part of his or her torso, consisting of the private parts or anal cleft or cleavage of the buttocks, is not covered by a fully opaque material or is so thinly covered as to appear uncovered, is guilty of a misdemeanor. (Ord. No. 3053, § 1, 10–16–67)"

Ordinances 11–25.2 and 11–25.4 may be simply described as prohibiting any person conducting or operating any of the establishments enumerated in 11–25.1 and 11–25.3 from employing a female unclothed as prohibited by 11–25.1, or any male or female unclothed as prohibited by 11–25.3.

■ From the most perfunctory reading of the Tucson ordinances it is clear that they are designed to prohibit servers of food and spirituous liquors and performers in establishments serving food and spirituous liquors from appearing with those areas of the human body uncovered which ordinarily have sexual connotations. It can therefore be reasonably concluded that Tucson's ordinances are but statutory applications of the common law offense known as indecent exposure, the elements of which are the wilful exposure of the person in a public place in the presence of

others. LeRoy v. Sidley, 1 Sed. 168, 82 Eng.Reprint 1036 (1663); Rex v. Crunden, 2 Campbell 89, 170 Eng.Reprint 1091 (1809).

The act of indecent exposure was punished at the common law as a public nuisance, an act *malum in se*.

"It is a nuisance and punishable at common law because it is an act malum in se, when committed as alleged in the indictment, affecting the public morals. A public nuisance, because it is violative of the rules of propriety, noxious to moral sensibilities, outrages decency, shocks, and is offensive to those feelings of chastity that people of ordinary respectability entertain, and has a tendency to corrupt the public morals." Truet v. State, 3 Ala.App. 114, 57 So. 512 (1912).

As has been said more recently of the phrase "indecent or obscene exposure of his person":

"In short, the legal writers and scholars have long conceived the phrase to signify and relate to a lascivious exhibition of those private parts of the person which instinctive modesty, human decency, or common propriety require shall be customarily kept covered in the presence of others. [Citation of authorities]", State v. Galbreath, 69 Wash.2d 664, 668, 419 P.2d 800, 803 (1966).

The evil sought to be suppressed is not only the infliction of nudity upon a beholder's moral sensibilities, but also the public degradation and debasement of the individual exposed.

Prohibitions against indecent exposure are not necessarily founded on matters obscene or pornographic:

"The sum of experience, including that of the past two decades, affords an ample basis for legislatures to conclude that a sensitive, key relationship of human existence, central to family life, community welfare, and the development of human personality, can be debased and distorted by crass commercial exploitation of sex. Nothing in the Constitution prohibits a State from reaching such a con-

clusion and acting on it legislatively simply because there is no conclusive evidence or empirical data." Per Burger, Chief Justice, in Paris Adult Theatre v. Slaton, —— U.S. ——, 93 S.Ct. 2628, 2638, 37 L.Ed.2d 446 (1973).

■ It is petitioners' position that Tucson's ordinances are in violation of the First and Fourteenth Amendments. They urge that dancing comes within the protection of the First Amendment as long as it is not obscene, citing In re Giannini, 69 Cal.2d 563, 72 Cal.Rptr. 655, 446 P.2d 535 (1968). We, however, reject such an argument when applied to restaurants, nightclubs, bars, cabarets, taverns, taprooms, and private, fraternal, social, golf or country clubs, and like public places. While the freedom of speech which the First Amendment guarantees includes all modes of communication of ideas by conduct, we do not accept the view that a limitless variety of conduct can be labeled expression.

"This Court has held that when 'speech' and 'nonspeech' elements are combined in the same course of conduct, a sufficiently important governmental interest in regulating the nonspeech element can justify incidental limitations on First Amendment freedoms." United States v. O'Brien, 391 U.S. 367, 376, 88 S.Ct. 1673, 1678, 20 L.Ed.2d 672, 679–680 (1968).

■ Although petitioners argue that Tucson's ordinances limit their First Amendment rights to freedom of speech because sexually symbolic areas of the human body are to be covered, we believe nudity in the setting of restaurants and cabarets is for the obvious purpose of commercial exploitation, used to attract customers, and "[i]ts elimination will not hinder the operation of the market place of ideas." Crownover v. Musick, 18 Cal.App. 3d 181, 188, 95 Cal.Rptr. 691, 695 (1971).

"When nudity is employed as sales promotion in bars and restaurants, nudity is conduct. As conduct, the nudity of employes is as fit a subject for governmental regulation as is the licensing of the liquor dispensaries and the fixing of

their closing hours." Portland v. Derrington, 253 Or. 289, 292–293, 451 P.2d 111, 113 (1969).

We cannot say that these ordinances are aimed at serious works which "lift the spirit, improve the mind, enrich the human personality and develop character * * *." Paris Adult Theatre v. Slaton, supra. We hold, therefore, that Tucson's ordinances do not prohibit an exchange of ideas which might tend to bring about political or social change and do not have a chilling effect on First Amendment rights.

Two further matters should be commented upon before final disposition of this case. We notice first the language of Tucson's ordinances enumerating the establishments within which appearing unclothed is prohibited. The enumeration of establishments is followed by the phrase "or in any public place." Such should be construed *ejusdem generis*. General words which follow the enumeration of particular classes of persons or things should be interpreted as applicable only to persons or things of the same general nature or class. City of Phoenix v. Yates, 69 Ariz. 68, 208 P.2d 1147 (1949); State Board of Barber Examiners v. Walker, 67 Ariz. 156, 192 P.2d 723 (1948). Accordingly, we construe the phrase "or in any public place" as being those public places similar to restaurants, nightclubs, bars, cabarets, etc., *where spirituous liquors and food are dispensed*.

We also note a possible source of confusion in Tucson's ordinances where, in enumerating the establishments in which nudity is prohibited, the word "theater" is used. In accordance with the maxim of *noscitur a sociis*, the meaning of the word "theater" should be ascertained by reference to the meaning of the words associated with it. City of Phoenix v. Yates, supra; Camerona v. Department of Public Welfare, 9 Ariz.App. 120, 449 P.2d 957 (1969). We, therefore, construe the word "theater" as being stages in nightclubs, bars, cabarets and the like where food and spirituous liquors are served. The ordinances plainly are not designed to suppress ideas conveyed through the legitimate theater and were not intended and do not bring within the scope of their prohibition performances of dances, plays, exhibitions, shows or other entertainment where the dissemination of ideas is the objective.

HAYS, C. J., CAMERON, V. C. J., and LOCKWOOD and HOLOHAN, JJ., concur.