402 F.Supp. 231 (1975)
Mary N. ATTWOOD and Joan F. Poston, Plaintiffs,
v.
Joseph PURCELL, Individually and as the City Attorney of the City of Phoenix, Arizona,
and
Lawrence Wetzel, Individually and as the Chief of Police of Phoenix, Arizona, Defendants.
Civ. No. 75-17 Phx. WPC.
United States District Court, D. Arizona.
September 8, 1975.
*232 Richard J. Hertzberg, Phoenix, Ariz., for plaintiffs.
Richard A. Garcia, Asst. City Atty., Phoenix, Ariz., for defendants.
Before ELY, Circuit Judge, and EAST and COPPLE, District Judges.

OPINION and ORDER
COPPLE, District Judge:
This action was brought pursuant to jurisdiction vested in this court by 42 U.S.C. § 1983, 28 U.S.C. § 1343(3), (4) and 28 U.S.C. § 2284(3). A three-judge court was convened in accordance with 28 U.S.C. § 2284(1).
Plaintiffs have been and wish to continue to be performing "topless" dancers whose services are engaged by adult film theaters to provide live entertainment between films. The dancers perform upon a stage and do not mingle with the audience. These theaters limit their clientele to paying adults and minors are excluded. The theaters do not advertise the performances as "nude" or "topless" dancing. Ample warning is provided so that the audience is aware of the nature of the film entertainment that the theaters offer. Such theaters are engaged solely in entertainment and not in the sale or service of alcoholic beverages[1] or food.
Officers of the Phoenix Police Department's Special Investigations Bureau (Vice Enforcement Unit) enter these theaters and observe the dancing performed therein. If a dancer merely bares her breasts the officer will take *233 no further action; however, if the baring of the breasts is combined with what the officer subjectively conceives to be suggestive conduct the dancer will be arrested[2] for violating A.R.S. § 13-531.[3] The statute provides:
"A person is guilty of a misdemeanor who wilfully and lewdly exposes his person or the private parts thereof in any public place or in a place where there are present other persons to be offended or annoyed thereby."
The department intends to reinstitute the enforcement of the statute unless prevented by the ruling of this court. It intends pursuant to A.R.S. § 13-1403 (2) (misdemeanor in the presence of an officer) to continue the use of arrest[4] and "booking" of the dancers as their standard operating procedure in such cases.
As a result of the previous conduct of the defendants and their stated purpose to continue the enforcement of A.R.S. § 13-531, the plaintiffs have sought both declaratory and injunctive relief claiming the statute on its face and as applied is unconstitutional. Failing to obtain such relief, the plaintiffs request an injunction requiring that the officers obtain the presence of the plaintiffs for criminal proceedings by use of summons instead of immediate arrest pursuant to A.R.S. § 13-1403(2).
The defendants urge that the instant case is a proper one for abstention. Younger v. Harris, 401 U.S. 37, 91 S.Ct. 746, 27 L.Ed.2d 669 (1971). We disagree. Neither plaintiff is a party to a presently pending civil or criminal action (in regards to this matter) in the state of Arizona. See Steffel v. Thompson, 415 U.S. 452, 94 S.Ct. 1209, 39 L.Ed.2d 505 (1974). If this court fails to act in their favour each of the plaintiffs will again be subject to arrest if they pursue their profession within the City of Phoenix.[5] The threat of prosecution and not bad faith prosecution or harassment is the standard to be applied by this court. See Ellis v. Dyson, 421 U.S. 426, 95 S.Ct. 1691, 44 L.Ed. 2d 274 (1975). Under these circumstances we see no reason for not invoking the jurisdiction of this court.

I.
The constitutional considerations that guide this court involve the characterization of nude or topless dancing. We are of the opinion that such dancing can be protected expression under the First Amendment.
Judge Charles D. Roush of the Superior Court of Maricopa County, in a well-reasoned, unreported and unappealed decision, Generosity v. City of Scottsdale[6], a copy of which has been filed herein, observed:
"It hardly needs a citation to establish that dancing can be a form of expression. Any person who has enjoyed a ballet would readily agree. Expressive dancing occupies a major portion of the musical shows on television. Nevertheless, several cases have established *234 that dancing can involve expressive communication." (citations omitted)
In another recent state court opinion the Supreme Court of Arizona in Yauch v. State, City of Tucson, 109 Ariz. 576, 514 P.2d 709 (1973), observed that nude dancing in a theatrical setting could enjoy the constitutional protection afforded by the First Amendment to creative expression.[7] The court noted that,
"The ordinances plainly are not designed to suppress ideas conveyed through the legitimate theater and were not intended and do not bring within the scope of their prohibition performances of dances, plays, exhibitions, shows or other entertainment where the dissemination of ideas is the objective." (514 P.2d at 712, emphasis added)
The Court of Appeals for the Second Circuit reached the same conclusion in Salem Inn, Inc. v. Frank, 501 F.2d 18, 21 n. 3 (2nd Cir. 1974) (Aff'd 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975). The court noted:
". . . while the entertainment afforded by a nude ballet at Lincoln Center to those who can pay the price may differ vastly in content (as viewed by the judges) or in quality (as viewed by critics), it may not differ in substance from the dance viewed by the person who, having worked overtime for the necessary wherewithal, wants some `entertainment' with his beer or shot of rye."
Other courts have resolved the issue in the same manner.[8]
The constitutional protection afforded to this mode of expression was noted by the Supreme Court in California v. La Rue, 409 U.S. 109, 93 S.Ct. 390, 34 L.Ed. 2d 342 (1972). This position was reiterated by the court in Doran v. Salem Inn, Inc., 422 U.S. 922, 932, 95 S.Ct. 2561 2568, 45 L.Ed.2d 648 (1975). The court stated:
"Although the customary `bar room' type of nude dancing may involve only the barest minimum of protected expression we recognized in California v. LaRue (citation omitted), that this form of entertainment might be entitled to First and Fourteenth Amendment protection under some circumstances."
We feel that the conclusion is inescapable: nude dancing can be a protected form of expression under the First Amendment and as such is applicable to the states through the Fourteenth Amendment. Our consideration of A.R. S. § 13-531 therefore must of necessity be guided by the constitutional standards applied to state control over such expression.

II.
We are of the opinion that A.R.S. § 13-531 is unconstitutional due both to its vagueness and overbreadth.
A. The statute is open to a vagueness attack at least in two ways. In the first instance the statute's reference to wilful and lewd exposure of one's "person or private parts thereof in any public place" fails to meet the requisite specificity required of statutes that intend to regulate expression. As the Supreme Court observed in Miller v. California, 413 U.S. 15, 27, 93 S.Ct. 2607, 2616, 37 L.Ed.2d 419 (1973),
". . . no one will be subject to prosecution for the sale or exposure of obscene materials unless these materials depict or describe patently offensive *235 `hard core' sexual conduct specifically defined by the regulating state law, as written or construed." (Emphasis added)
The reason for such specificity is two-fold. First, the individual who may wish to perform an expressive act must be put on notice of when he or she will lose the protection of the First Amendment. Secondly, the censor or magistrate must be provided with clear guidance as to what may or may not be controlled under the statute. See Paris Adult Theatre I v. Slaton, 413 U.S. 49, 93 S.Ct. 2628, 37 L.Ed.2d 446 (1973), Miller v. California, supra, and Roth v. United States, 354 U.S. 476, 77 S.Ct. 1304, 1 L.Ed.2d 1498 (1957).
The Court has struck down as lacking the required specificity statutes which have used terms such as "sexual promiscuity" (Interstate Circuit Inc. v. City of Dallas, 390 U.S. 676, 88 S.Ct. 1298, 20 L.Ed.2d 225 (1968)) and "would appeal to lust" (Rabeck v. New York, 391 U.S. 462, 88 S.Ct. 1716, 20 L.Ed.2d 741 (1968)). We think that the terms "wilfully and lewdly" are hardly more definite than those which have been struck down. In United States v. 12 200-Ft. Reels of Super 8 mm Film, 413 U.S. 123, 130 n. 7, 93 S.Ct. 2665, 2670 n. 7, 37 L. Ed.2d 500 (1973), the court noted:
"We further note that, while we must leave to state courts the construction of state legislation, we do have a duty to authoritatively construe federal statutes where `"a serious doubt of constitutionality is raised"' and `"a construction of the statute is fairly possible by which the question may be avoided."' United States v. Thirty-Seven Photographs, 402 U.S. 363, 369, 91 S.Ct. 1400, 1404, 28 L.Ed. 2d 822 (1971) (opinion of White, J.), quoting from Crowell v. Benson, 285 U.S. 22, 62, 52 S.Ct. 285, 296, 76 L.Ed. 598 (1932). If and when such a `serious doubt' is raised as to the vagueness of the words `obscene,' `lewd,' `lascivious,' `filthy,' `indecent,' or `immoral' as used to describe regulated material in 19 U.S.C. § 1305(a) and 18 U.S.C. § 1462, see United States v. Orito, supra, 413 U.S. [139], at 140 n. 1, 93 S.Ct. [2674], at 2676 n. 1, [37 L.Ed.2d 513] [1973], we are prepared to construe such terms as limiting regulated material to patently offensive representations or descriptions of that specific `hard core' sexual conduct given as examples in Miller v. California, supra, 413 U.S., at 25, 93 S.Ct., at 2615. See United States v. Thirty-Seven Photographs, supra, 402 U.S., at 369-374, 91 S.Ct., at 1404-1407 (opinion of White, J.). Of course, Congress could always define other specific `hard core' conduct."
The state courts have not addressed themselves in any of the reported decisions to a specific interpretation of A.R.S. § 13-531. We must therefore judge the statute on its face.
The statute is phrased in the disjunctive and we find equally vague the second part thereof which provides ". . . in a place where there are present other persons to be offended or annoyed thereby". In the instant case those who payed and voluntarily entered the theater to observe[9] the performance were not shown to be "offended or annoyed thereby"; however, they were probably highly offended and annoyed when the officer bared his badge and interrupted the performance. The standard of "offended or annoyed thereby" is by its very nature vague and "men of common intelligence must necessarily guess at its meaning." Connally v. General Construction Co., 269 U.S. 385, 46 S.Ct. 126, 70 L.Ed. 322 (1926). The additional element that a police officer be "offended or annoyed *236 thereby" is also of little value in instructing an individual as to what is or is not a permissible mode of expression. See Coates v. City of Cincinnati, 402 U.S. 611, 91 S.Ct. 1686, 29 L.Ed.2d 214 (1971).
A.R.S. § 13-531 therefore in either of its standards for the regulation of expression is unconstitutionally vague.
B. We are also of the opinion that A.R.S. § 13-531 suffers from the Due Process infirmity of overbreadth. The statute is overbroad in its totality and in either of its parts ("in any public place" and "in a place where there are present other persons to be offended or annoyed thereby.").
The Supreme Court in Doran, supra, 422 U.S. at 933, 95 S.Ct. at 2568 addressed itself to the same phrase (any public place) found in a New York statute regulating such expression as we consider here and observed:
"In the present case, the challenged ordinance applies not merely to places which serve liquor, but to many other establishments as well. The District Court observed, we believe correctly:
`The local ordinance here attacked not only prohibits topless dancing in bars but also prohibits any female from appearing in "any public place" with uncovered breasts. There is no limit to the interpretation of the term "any public place." It could include the theater, town hall, opera house, as well as the public market place, street or any place of assembly, indoors or outdoors. Thus, this ordinance would prohibit the performance of the "Ballet Africains" and a number of other works of unquestionable artistic and socially redeeming significance.' 364 F.Supp., at 483."
A.R.S. § 13-531 suffers from this same lack of limitation in the scope of its enforcement "in any public place".
The statute in its other possible application, "in a place where there are present other persons to be offended or annoyed thereby", is equally subject to attack as being overbroad. It is not difficult to construct a situation in which the statute could be enforced in a constitutionally protected setting. A husband could in the privacy of the home expose a portion of his person to his wife in a "wilfull and lewd" manner and she could be "offended or annoyed thereby." Of course such a state regulation literally applied in the privacy of one's home would be highly suspect if not unconstitutional per se. See Paris Adult Theatre I v. Slaton, 413 U.S. 49, 65-8, 93 S.Ct. 2628, 39-40, 37 L.Ed.2d 446 (1972); Stanley v. Georgia, 394 U.S. 557, 89 S.Ct. 1243, 22 L.Ed.2d 542 (1969); Griswold v. Connecticut, 381 U.S. 479, 85 S.Ct. 1678, 14 L.Ed.2d 510 (1965).
We do not believe that A.R.S. § 13-531 lends itself to a narrowing construction. The statute itself uses such broad and sweeping language that only radical surgery could save it. The state appellate courts have not provided a sufficient framework in the case law from which we could draw the necessary construction to save the statute. As the Supreme Court has observed, "we must leave to state courts the construction of state legislation." United States v. 12 200-Ft. Reels of Super 8 mm Film, supra, 413 U.S. at 130 n. 7, 93 S.Ct. at 2670. Cf. Erznoznik v. City of Jacksonville, 422 U.S. 205, 216, 95 S.Ct. 2268, 45 L.Ed.2d 125 (1975). Absent such a construction by the state courts this court must declare the statute unconstitutional on its face. We must leave to the state courts and legislature a possible narrowing of the statute to bring it within the permissible range of state regulation of expression. See Gooding v. Wilson, 405 U.S. 518, 92 S.Ct. 1103, 31 L.Ed.2d 408 (1972).

III.
Even if it were possible to narrow A.R.S. § 13-531 so as to cure its *237 vagueness and overbreadth, the statute would be unconstitutional as applied. Censorship is a frightening and powerful weapon, as the Supreme Court observed in Southeastern Promotions, Ltd. v. Conrad, 420 U.S. 546, 553, 95 S.Ct. 1239, 1244, 43 L.Ed.2d 448 (1975).
"Invariably, the Court has felt obliged to condemn systems in which the exercise of such authority was not bound by precise and clear standards. The reasoning has been, simply, that the danger of censorship and of abridgement of our precious First Amendment freedoms is too great where officials have unbridled discretion over a forum's use. Our distaste for censorship  reflecting the natural distaste of a free peopleis deep-written in our law."
In the instant case the police officer acts as a censor for all intents and purposes. After he has made the determination that a dancer is violating A.R.S. § 13-531 he exercises the most effective form of prior restraint[10] by arresting the dancer during the performance or immediately thereafter thus precluding further performances by that dancer while she is being processed through "booking" and subsequent bail procedures of the City of Phoenix.[11]
We are of the opinion that such prior restraint violates the procedural safeguards that have been constructed to protect First Amendment freedoms. The Supreme Court has noted on several occasions that such arrests or seizures must be preceded by the independent judgment of a disinterested magistrate. See Heller v. New York, 413 U.S. 483, 93 S.Ct. 2789, 37 L.Ed.2d 745 (1973); Roaden v. Kentucky, 413 U.S. 496, 93 S.Ct. 2796, 37 L.Ed.2d 757 (1973).
In view of our conclusions as indicated above we are not required to reach plaintiffs' request for an injunction as regards the use of a summons in place of arrest under A.R.S. § 13-1403(2).
It is ordered that counsel for the plaintiffs will submit to the court, within ten (10) days, a form of final judgment in accordance with the foregoing.
NOTES
[1] The facts under consideration in this action do not raise the problems unique to the power of the state to control the liquor licensing process. See Miller v. California, 413 U.S. 15, 93 S.Ct. 2607, 37 L.Ed.2d 419 (1973).
[2] Immediate arrest and detention puts emphasis on the pure conduct nature of the offense and precludes by its nature the assumption that such dancing is in any way protected by the First Amendment. See discussion infra. See also Arizona Appellate Decisions 1973-74, 16 Ariz.L.Rev. 489, 542.
[3] Individuals are arrested pursuant to A.R.S. § 13-531 if the performance does not take place in an establishment serving food or liquor. Local ordinances govern topless dancing in such establishments. See Yauch v. State, City of Tucson, 109 Ariz. 576, 514 P.2d 709 (1973).
[4] The Arizona Rules of Criminal Procedure, Rule 3.1, permit either the use of a summons or arrest.
[5] Pending the outcome of this action the City Police have not been arresting individuals under A.R.S. § 13-531 in accordance with the Temporary Restraining Order issued by this court.
[6] No. Civ-266720 (Jan. 10, 1973). The opinion was based upon certain city ordinances that attempted to control dancing in liquor-serving establishments.
[7] This decision of the Supreme Court of Arizona is not dispositive of the issues presented here. That decision considered the constitutionality of city ordinances which regulated nude dancing in establishments that served food and liquor. The court was not faced with the application of A.R.S. § 13-531 to non-liquor and food situations.
[8] See Salem Inn, Inc. v. Frank, 522 F.2d 1045 (2nd Cir. 1975); Salem Inn, Inc. v. Frank, 381 F.Supp. 859 (E.D.N.Y.1974) (this case was subsequent to the Court's ruling in Doran, supra), and Wood v. Moore, 350 F. Supp. 29 (W.D.N.C.1972).
[9] As the Court observed in Erznoznik v. City of Jacksonville, 422 U.S. 205, 95 S.Ct. 2268, 2273, 45 L.Ed.2d 125 (1975):

". . . the burden normally falls upon the viewer to `avoid further bombardment of [his] sensibilities simply by averting [his] eyes' Cohen v. California, 403 U.S. [15] at 21 (91 S.Ct. 1780 at 1786, 29 L.Ed.2d 284 (1971))."
[10] It is a unique view of the nature of expression that what would be offered the protection of a hearing and judicial process because it was to be performed at a Community Theater would be denied protection because it was presented at an "adult movie theater". Such reasoning fails to recall that which we call great literature today was to be found upon stages in 16th century England that hardly enjoyed a reputation much better than an adult movie theater. It should be also noted that those who performed those works did so in order to obtain money.
[11] As Judge Roush observed in Generosity, supra, at 18:

". . . the procedure used by the City in enforcement of its statute is improper. No form of expression can be restrained or proscribed without a prior adversary hearing. Lee Art Theatre v. Virginia, 392 U.S. 636, 88 S.Ct. 2103, 20 L.Ed.2d 1313 (1968), Carroll v. Princess Anne, 393 U.S. 175, 89 S.Ct. 347, 21 L.Ed.2d 325 (1968), A Quantity of Copies of Books v. Kansas, 378 U.S. 205, 84 S.Ct. 1723, 12 L.Ed.2d 809 (1964). An arrest clearly constitutes such restraint. Phoenix v. Fine, 4 Ariz.App. 303, 420 P.2d 26 (1966)."