576 P.2d 1357

STATE of Arizona, Appellee,

v.

Donald Wesley GATES, Appellant.

No. 3427–PR.

Supreme Court of Arizona,
In Banc.

March 2, 1978.

Rehearing Denied March 28, 1978.

Bruce E. Babbitt, Atty. Gen. by William J. Schafer, III and Robert S. Golden, Asst. Attys. Gen., Phoenix, for appellee.

Ross P. Lee, Maricopa County Public Defender by John Foreman, Deputy Public Defender, Phoenix, for appellant.

HOLOHAN, Justice.

Donald Wesley Gates, appellant, was charged by information with violating A.R.S. § 13–981 by wearing a mask for the purpose of escaping detection or identification in the commission of a public offense, namely, indecent exposure. After trial by jury, he was convicted and sentenced to imprisonment in the state prison. A timely appeal was filed. The Court of Appeals affirmed his conviction. *State v. Gates*, 25 Ariz.App. 241, 542 P.2d 822 (1975); Supplemental Opinion, 26 Ariz.App. 75, 546 P.2d 52 (1976). We granted review.

The underlying public offense which appellant was found to have committed while masked was indecent exposure. A.R.S. § 13–531.[1] By virtue of the provisions of A.R.S. § 13–981 the wearing of a mask to escape detection or identification in the commission of a public offense constituted a felony.[2] The statute A.R.S. § 13–981 has rarely been employed. It was first enacted as Section 1 of Chapter 78, Laws of 1923. The purpose of the section and its companion provisions was to frustrate the efforts of the Ku Klux Klan in Arizona. The statute appears to have been modeled after the federal statute 42 U.S.C. 1985[3] which had been originally enacted in April 1871 to enforce the provisions of the Fourteenth Amendment. *See Collins v. Hardyman*, 341 U.S. 651, 71 S.Ct. 937, 95 L.Ed. 1253 (1951).

We are satisfied with the analysis made by the Court of Appeals of the meaning and intent of A.R.S. § 13–981, and we adopt their opinion on that point and the remaining issues discussed in their principal opinion. *State v. Gates*, 25 Ariz.App. 241, 542 P.2d 822 (1975).

The issue which concerns us is the constitutionality of Arizona's indecent exposure statute. A.R.S. § 13–531. A three-judge District Court for the District of Arizona declared the foregoing statute unconstitutional in September 1975. *Attwood v. Purcell*, 402 F.Supp. 231 (1975). In the federal action two topless dancers sought to enjoin enforcement of the indecent exposure statute against them by law enforcement officers of the City of Phoenix. The District Court held that dancing can be expression protected under the First and Fourteenth Amendments of the U.S. Constitution. Since the statute by application to the dancers results in regulation of expression it must meet the requisite specificity required of statutes that intend to regulate expression. The District Court found that the statute due to its vagueness and overbreadth was unconstitutional.

The District Court decision was announced some two months before the Court of Appeals filed its original opinion on November 25, 1975. Appellant filed a motion for rehearing raising for the first time the issue of the constitutionality of the indecent exposure statute. On February 24, 1976 the Court of Appeals denied rehearing holding that the District Court decision in *Attwood* was not to be applied retroactively to appellant. *State v. Gates*, 26 Ariz.App. 75, 546 P.2d 52 (1976). The supplemental opinion of the Court of Appeals is vacated.

---

1. A person is guilty of a misdemeanor who wilfully and lewdly exposes his person or the private parts thereof in any public place or in a place where there are present other persons to be offended or annoyed thereby.

2. A person who wears a mask or personal disguise, complete or partial, with intent to disturb, annoy, alarm or intimidate any person, or for the purpose of escaping detection or identification in the commission of a public offense, or for the purpose of evading arrest, is guilty of a felony.

3. If two or more persons in any State or Territory conspire or go in disguise on the highway or on the premises of another, for the purpose of depriving, . . . any person or class of persons of the equal protection of the laws, or of equal privileges and immunities under the laws; . . . 42 U.S.C. § 1985(3).

■ The first issue facing this court is whether A.R.S. § 13–531 is unconstitutional. The federal District Court decision in *Attwood v. Purcell, supra,* strikes down the statute because it is vague and overbroad in its application to a constitutionally protected area—forms of expression under the First Amendment. The decision of the District Court is entitled to respectful consideration, but it is not binding on us. *State v. Norflett,* 67 N.J. 268, 337 A.2d 609 (1975); *People v. Bradley,* 1 Cal.3d 80, 81 Cal.Rptr. 457, 460 P.2d 129 (1969). Even with respect to federal constitutional issues, the state and lower federal courts occupy comparable positions, a sort of parallelism with each governed by the same reviewing authority—the United States Supreme Court. *State v. Coleman,* 46 N.J. 16, 214 A.2d 393 (1965), *cert. den.,* 383 U.S. 950, 86 S.Ct. 1210, 16 L.Ed.2d 212 (1966).

■ From a review of the authorities cited by the District Court we are satisfied that the statute could be applied to areas such as theater and dance that have been held to represent forms of expression protected by the First Amendment. The statute has not been so drawn or previously construed to eliminate such applications. *See State v. Wayman,* 104 Ariz. 125, 449 P.2d 296 (1969) and *Yauch v. State,* 109 Ariz. 576, 514 P.2d 709 (1973). Such application to protected areas does not meet the constitutional standards required when the state seeks to regulate such a protected area as free speech.

The second issue to be considered is whether the ruling should be applied in this case. For the reasons expressed hereafter we will apply this construction and ruling prospectively.

■ The indecent exposure statute has been a part of the statutes of this state since territorial days. It finds its origins in the common law. *See Yauch v. State, supra.* The statute as applied to the appellant is clear and unambiguous; nor did he argue that he was not on notice as to the type of conduct proscribed. His acts were, without question, the type of conduct intended to be proscribed. It is only as the statute may be applied to others whose nudity is only an incidental part of a means of expression that the statute becomes defective. We recognize, however, that appellant has standing to challenge the statute. *Grayned v. City of Rockford,* 408 U.S. 104, 92 S.Ct. 2294, 33 L.Ed.2d 222 (1972).

■ A state is free under the Constitution to make a choice for itself between the principle of forward operation of a ruling and that of relation backward. *Great Northern Ry. Co. v. Sunburst Oil & Ref.,* 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360 (1932). This principle was reaffirmed in *Linkletter v. Walker,* 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965):

> "Thus, the accepted rule today is that in appropriate cases the Court may in the interest of justice make the rule prospective." *Id.* at 85 S.Ct. 1737.

There is no distinction to be drawn between civil and criminal matters in the effect to be given cases where previous judicial decisions are altered or overruled. *Id. See also James v. United States,* 366 U.S. 213, 81 S.Ct. 1052, 6 L.Ed.2d 246 (1961). Nor is there any constitutional impediment to the application of a prospective application of a new decision in the constitutional area. *Linkletter v. Walker, supra.* A court is neither *required* nor prohibited from applying a decision retrospectively. *Id.*

This court on a number of occasions has given prospective application to a change in the interpretation of the law. *Southern Pacific Co. v. Cochise County,* 92 Ariz. 395, 377 P.2d 770 (1963); *Application of Billie,* 103 Ariz. 16, 436 P.2d 130 (1968); *State v. Griswold,* 105 Ariz. 1, 457 P.2d 331 (1969). We have also spoken on the subject of retrospective application of decisions in the constitutional area. *State v. Stenrud,* 113 Ariz. 327, 553 P.2d 1201 (1976). After reviewing the authorities Justice Gordon, writing for the court, concluded:

> "Retroactive application of a rule is appropriate if it affects the integrity of the fact-finding process and there is a clear danger of convicting the innocent." *State v. Stenrud,* 113 Ariz. 328, 553 P.2d 1202.

Generally the decision to refuse retroactive application has been applied to cases in which the judgment of conviction has become final. *See Linkletter v. Walker, supra*; *Wainwright v. Stone*, 414 U.S. 21, 94 S.Ct. 190, 38 L.Ed.2d 179 (1973); *Rose v. Locke*, 423 U.S. 48, 96 S.Ct. 243, 46 L.Ed.2d 185 (1975). As pointed out previously, this is not required, and a state court may make the choice for itself between prospective or retrospective application of its decisions. *Great Northern Ry. Co. v. Sunburst Oil & Ref., supra*; *Linkletter v. Walker, supra*. In *State v. Stenrud, supra*, a case in which the judgment of conviction was on appeal, this court refused to apply retroactively to that case a recent decision concerning pleas of guilty. Thus, whether the application of the new rule be thought of as a prospective application or as a refusal of retroactive application the result is the same.

■ Considering the criteria set forth in the federal decisions and our case *State v. Stenrud, supra*, it appears that this is a case for prospective application. The defect in the statute is not applicable to the appellant's situation. He may be described as a hard-core violator. Nor can there be any purpose to applying the decision retroactively to set aside convictions in which there is no issue of protected expression. At the time the appellant committed his acts there had been a long-established commonlaw history supporting the application of this type of statute against the acts of appellant. There is nothing in the record to suggest any reason why the statute should not be enforced against this appellant. His actions in no way offer support to the interest which may require protection under the First Amendment. We therefore affirm appellant's conviction and sentence.

We feel compelled to follow the decision of the District Court in *Attwood*, but we further hold that the decision to declare the statute A.R.S. § 13–531 unconstitutional is to be prospective in application.

STRUCKMEYER, V. C. J., and HAYS, J., concurring.

GORDON, Justice (dissenting).

The majority charts a dangerous course by allowing a person to be convicted with an unconstitutional statute. In doing so, the members of this Court recognize that A.R.S. § 13–531 is *void* on account of vagueness and overbreadth, yet they allow appellant's conviction to stand because in their eyes he is "a hard core violator". There may be others, who have already begun the process of appealing their convictions for violations of A.R.S. § 13–531. Since I am unable to discern any rational means of applying such an arbitrary standard to these future appeals, I am compelled to dissent.

The cases relied on by the majority do not constitute authority for the incongruous result which they have reached. Both *Linkletter v. Walker*, 381 U.S. 618, 85 S.Ct. 1731, 14 L.Ed.2d 601 (1965), and *State v. Stenrud*, 113 Ariz. 327, 553 P.2d 1201 (1976), concerned the application of court-made rules which changed previous court-made rules. Because *Linkletter* and *Stenrud* did not involve the constitutionality of a statute, the process of analysis utilized in those cases simply is not applicable here.

"*Linkletter* itself announced an exception to the general rule of retroactivity * *. *Linkletter* * * * dealt with those constitutional interpretations bearing on the use of evidence or on a particular mode of trial. These procedural rights and methods of conducting trials, however, do not encompass all of the rights found in the first eight Amendments. Guarantees that do not relate to these procedural rules cannot, for retroactivity purposes, be lumped conveniently together in terms of analysis." *Robinson v. Neil*, 409 U.S. 505, 507–508, 93 S.Ct. 876, 877–878, 35 L.Ed.2d 29 (1973).

Justice Rehnquist, writing for the majority in *Robinson*, cited *Furman v. Georgia*, 408 U.S. 238, 92 S.Ct. 2726, 33 L.Ed.2d 346 (1972) as one example of a holding being applied retrospectively despite its not meeting the *Linkletter* criteria. As a result of that retrospective application, Furman's death penalty was reversed notwithstand-

ing his being a "hard core violator" who was aware of the possible consequences of killing a person.

The remaining cases cited by the majority also fail to support their conclusions. *James v. United States*, 366 U.S. 213, 81 S.Ct. 1052, 6 L.Ed.2d 246 (1961), altered a Supreme Court interpretation of the Internal Revenue Code. Likewise, *Great Northern Ry. Co. v. Sunburst Oil & Refining Co.*, 287 U.S. 358, 53 S.Ct. 145, 77 L.Ed. 360 (1932), revolved around the effect of a Montana Supreme Court's opinion which changed its own prior interpretation of a tariff statute. The common thread which runs through all the above cases arises from a party's reliance on a previous rule or interpretation of a supreme court which was later changed by that court. Because of that reliance, the changes announced by those courts were applied only prospectively. Arizona, on the other hand, has not previously spoken on A.R.S. § 13–531. If we had previously given the statute a permissible limiting interpretation, the result arrived at by the majority would have been correct. *See Wainwright v. Stone*, 414 U.S. 21, 94 S.Ct. 190, 38 L.Ed.2d 179 (1973); *Rose v. Locke*, 423 U.S. 48, 96 S.Ct. 243, 46 L.Ed.2d 185 (1975).

By warping the holding of *Linkletter* and *Stenrud* to reach the result in this case, the majority ignores a fundamental rule of law which is based on the United States Constitution being the supreme law of the land. United States Const. Art. VI, cl. 2; Ariz. Const. Art. II, § 3. Because of this fact, "An unconstitutional law is void, and is as no law. An offense created by it is not a crime. A conviction under it is not merely erroneous, but it is illegal and void and cannot be a legal cause of imprisonment". *Ex Parte Siebold*, 100 U.S. 371, 376–77, 25 L.Ed. 717 (1879). *See also Norton v. Shelby County*, 118 U.S. 425, 6 S.Ct. 1121, 30 L.Ed. 178 (1886). This basic principle of American jurisprudence cannot be swept aside to incarcerate even the most hard core violator.

The majority has granted Gates standing to challenge the constitutionality of A.R.S. § 13–531 as applied to others, and, pursuant to his challenge, they have held the statute void on account of vagueness and overbreadth. Nevertheless, they leave him incarcerated. "Although a statute may be neither vague, overbroad, nor otherwise invalid as applied to the conduct charged against a particular defendant, he is permitted to raise its vagueness or unconstitutional overbreadth as applied to others. And if the law is found deficient in one of these respects, it may not be applied to him either * * *." *Coates v. City of Cincinnati*, 402 U.S. 611, 619–620, 91 S.Ct. 1686, 1691, 29 L.Ed.2d 214 (1971) (White, J. dissenting); *Accord Dombrowski v. Pfister*, 380 U.S. 479, 85 S.Ct. 1116, 14 L.Ed.2d 22 (1965); *See also, Winters v. People of State of New York*, 333 U.S. 507, 68 S.Ct. 665, 92 L.Ed. 840 (1948); *Herndon v. Lowry*, 301 U.S. 242, 57 S.Ct. 732, 81 L.Ed. 1066 (1937).

My understanding of this area of the law remains unchanged by the contentions and authorities presented by the majority. Thus, for the reasons set forth above, I respectfully dissent from the unprecedented position adopted by the majority.

CAMERON, Chief Justice, specially concurring.

I agree with the dissent of Justice Gordon that if the statute, A.R.S. § 13–531, is void on account of vagueness and overbreadth, then to allow the conviction to stand because defendant is a "hard core violator" puts the doctrine of judicial review on an ad hoc basis in which the affirmance or reversal is based not upon the law but upon the subjective views of the members of an appellate court as to whether they approve or disapprove of the defendant's conduct.

I am not persuaded, however, that as applied to the acts of the defendant in the instant case, the statute is unconstitutional and that therefore defendant has standing to raise the issue.

To begin with, it should be noted that a statute that is unconstitutional as to one set of defendants or to one type of conduct may not be unconstitutional as to other defendants or other conduct. *Broadrick v.*

*Oklahoma,* 413 U.S. 601, 610, 93 S.Ct. 2908, 2915, 37 L.Ed.2d 830, 839 (1973); *United States v. Raines,* 362 U.S. 17, 21, 80 S.Ct. 519, 522, 4 L.Ed.2d 524, 529 (1960).

For the purposes of our decision, we must accept the fact that as applied to "topless dancers" the statute is overbroad and vague. *Attwood v. Purcell,* D.C., 402 F.Supp. 231 (1975). But being overly broad and vague as to topless dancers does not mean that the statute is overbroad and vague as to the facts in the instant case. The defendant ran down the street in tights with the crotch removed, exposing his genitals to the public. This was anti-social conduct to which the statute applies. I believe that:

> "[T]here are limitations in the English language with respect to being both specific and manageably brief, and it seems to us that although the prohibitions may not satisfy those intent on finding fault at any cost, they are set out in terms that the ordinary person exercising ordinary common sense can sufficiently understand and comply with, without sacrifice to the public interest." *United States Civil Service Commission v. National Association of Letter Carriers, AFL–CIO,* 413 U.S. 548, 578–79, 93 S.Ct. 2880, 2897, 37 L.Ed.2d 796, 816 (1973).

We believe that "men of common intelligence" need not "necessarily guess at its meaning." *Connally v. General Construction Co.,* 269 U.S. 385, 391, 46 S.Ct. 126, 127, 70 L.Ed. 322, 328 (1926).

Because this statute is not overbroad or vague as to the defendant, I do not believe that he has standing to challenge the constitutionality of the statute as it applies to others. As the United States Supreme Court stated:

> "Embedded in the traditional rules governing constitutional adjudication is the principle that a person to whom a statute may constitutionally be applied will not be heard to challenge that statute on the ground that it may conceivably be applied unconstitutionally to others, in other situations not before the Court. (citations omitted) A closely related principle is

that constitutional rights are personal and may not be asserted vicariously. (citation omitted) These principles rest on more than the fussiness of judges. They reflect the conviction that under our constitutional system courts are not roving commissions assigned to pass judgment on the validity of the Nation's laws. * * * " *Broadrick v. Oklahoma,* supra, 413 U.S. at 610–11, 93 S.Ct. at 2915, 37 L.Ed.2d at 839 (1973).

And while the court in *Broadrick,* supra, recognized the fact that they are more likely to find facial overbreadth in First Amendment cases, the court did state:

> " * * * But the plain import of our cases is, at the very least, that facial overbreadth adjudication is an exception to our traditional rules of practice and that its function, a limited one at the outset, attenuates as the otherwise unprotected behavior that it forbids the State to sanction moves from 'pure speech' toward conduct and that conduct—even if expressive—falls within the scope of otherwise valid criminal laws that reflect legitimate state interests in maintaining comprehensive controls over harmful, constitutionally unprotected conduct. Although such laws, if too broadly worded, may deter protected speech to some unknown extent, there comes a point where that effect—at best a prediction—cannot, with confidence, justify invalidating a statute on its face and so prohibiting a State from enforcing the statute against conduct that is admittedly within its power to proscribe. (citations omitted) To put the matter another way, particularly where conduct and not merely speech is involved, we believe that the overbreadth of a statute may not only be real, but substantial as well, judged in relation to the statute's plainly legitimate sweep. * * * whatever overbreadth may exist should be cured through case-by-case analysis of the fact situations * * * ." *Broadrick v. Oklahoma,* supra, 413 U.S. at 615–16, 93 S.Ct. at 2917–18, 37 L.Ed.2d at 842. See generally, The First Amendment Overbreadth Doctrine, 83 Harvard Law Review 844 (1970).

The United States District Court was concerned in *Attwood*, supra, with the question of nude dancing as a form of expression and stated:

"We feel that the conclusion is inescapable: nude dancing can be a protected form of expression under the First Amendment and as such is applicable to the states through the Fourteenth Amendment. Our consideration of A.R.S. § 13–531 therefore must of necessity be guided by the constitutional standards applied to state control over such expression." *Attwood v. Purcell*, supra, 402 F.Supp. at 234.

And the Court of Appeals for the Second Circuit has stated:

" * * * while, the entertainment afforded by a nude ballet at Lincoln Center to those who can pay the price may differ vastly in content (as viewed by the judges) or in quality (as viewed by the critics), it may not differ in substance from the dance viewed by the person who, having worked overtime for the necessary wherewithal, wants some 'entertainment' with his beer or shot of rye." *Salem Inn, Inc. v. Frank*, 501 F.2d 18, 21, n. 3 (2nd Cir. 1974) aff'd 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975).

Therefore, I disagree with the reasoning of the majority but concur in the result.