624 P.2d 334

Bobby J. WORTHAM and Jack Wortham, dba Miracle Mile Theatre; and Habib Caruba, dba Follies Burlesque Theatres, Plaintiffs/Appellees,

v.

CITY OF TUCSON, a municipal corporation, and City of Tucson Director of Finance, Defendants/Appellants.

No. 2 CA–CIV 3641.

Court of Appeals of Arizona, Division 2.

Dec. 30, 1980.

Rehearing Denied Feb. 4, 1981.

Review Denied March 3, 1981.

138

Stompoly & Evan, P. C. by William G. Walker, Tucson, for plaintiffs/appellees.

Frederick S. Dean, City of Tucson, City Atty. by Louise B. Stratton, Tucson, for defendants/appellants.

## OPINION

HOWARD, Judge.

At issue is the constitutionality of Ordinance No. 4783 which provides for the licensing and regulation of adult entertainment enterprises. In a declaratory action filed by appellees the trial court granted summary judgment in their favor and declared the ordinance unconstitutional. Although we find some parts of the ordinance to be constitutionally infirm, we believe they can be severed from the rest of the ordinance.

The purpose and intent of the ordinance is set forth in Sec. 7–206:

"It is the purpose and intent of this article to provide for the orderly regulation of adult entertainment enterprises and establishments, as defined in this article, in the interests of public health, safety and welfare, and, to prevent solicitation for acts of prostitution in adult entertainment enterprises and establishments by providing certain minimum standards and regulations for adult entertainment enterprises and establishments, and by providing standards for operators and employees of adult entertainment enterprises and establishments."

Section 7–207 contains definitions which are pertinent to this case:

"(1) *Adult entertainment enterprise* means any business activity wherein is furnished for a fee or charge or other like consideration, whether in public, semi-public or private premises, the opportunity to feel, handle, touch, paint, be in the presence of, be entertained by the unclothed body or the unclothed portion of the body of another person, or to observe, view or photograph any such activity.

(2) *Unclothed portion of the body* means a state of dress of such a manner that the nipple and aureola (the more darkly pigmented portion of the breast encircling the nipple) are not firmly covered by a fully opaque material and/or the lower part of the torso, consisting of

the private parts or anal cleft or cleavage of the buttocks, is not covered by a fully opaque material.

(3) *Adult entertainment establishment* means any establishment or place of business where any individual, firm, association, partnership, corporation, joint venture or combination of individuals engages in, conducts, operates, carries on or permits to be engaged in, conducted, operated or carried on any adult entertainment enterprise regardless of whether any other activity is also conducted on the premises.

\* \* \* "

Appellees have stipulated that they conduct adult entertainment enterprises as defined by the ordinance:

Section 7–208 contains the following exempt activities:

"(1) Physicians, surgeons, chiropractors, osteopaths or physical therapists who are duly licensed to practice their respective professions in the State of Arizona;

(2) Nurses registered under the laws of the State of Arizona;

(3) Trainers of any amateur, semiprofessional or professional athlete or athletic team;

(4) Barbers and beauticians who are duly licensed under the laws of the State of Arizona;

(5) Any activity conducted or sponsored by any school district or other public agency;

(6) Any activity conducted by a person pursuant to any license issued by the State of Arizona or any agency thereof or political subdivision which licenses, prescribes standards for and supervises such activity or profession;

(7) Portions of performances on theater, concert hall, music hall or auditorium stages wherein such displays are an integral part of a dramatic or comedic presentation;

(8) Private schools providing a course of instruction in photography or photography studios which do not provide, for consideration, photography equipment, models and a studio;

(9) Modeling agencies, schools or services, except those which provide live modeling services, for consideration, in which a patron may obtain an exclusive modeling exhibition in which he or she is the only observer."

Section 7–209 makes it unlawful "to operate an adult entertainment enterprise without first obtaining and maintaining in effect an adult entertainment enterprise license...." It also makes unlawful the operation of an adult entertainment enterprise on the same premises as is located a "cocktail lounge, bar or tavern, photography studio, telephone answering service, theater, bookstore, martial arts studio, physical culture studio, public bath, motel, hotel, or massage parlor." Sec. 7–210 requires a person desiring an adult entertainment license to apply to the city director of finance who then refers the application to the chief of police for investigation. After reasonable time for investigation, the chief of police recommends to the director of finance that the license be approved or disapproved. Sec. 7–210(c).

Section 7–211 sets forth the contents of the license application. It requires, inter alia, that the applicant provide two portrait photographs, business employment history during the previous five years, all felony and misdemeanor convictions, and fingerprints.

The grounds for denial of a license are enumerated in Sec. 7–212:

"No adult entertainment enterprise license shall be issued or renewed if the applicant:

(1) Has been convicted within the previous five (5) years of a felony or of any offense involving moral turpitude, or of any offense involving prostitution or any of the related offenses enumerated in Article 31, Chapter 2, Title 13 of Arizona Revised Statutes, rape, indecent exposure, child molesting, lewd and lascivious acts as enumerated in the city Code or defined in the Arizona Revised Statutes, or of any offense involving the unlawful

carrying, possession, or use of a dangerous weapon, or of any offense involving the unlawful possession, sale, or use of dangerous or narcotic drugs;

(2) Is not eighteen (18) years of age or older;

(3) Knowingly made any false statement in his application;

(4) While not licensed under the provisions of this article, committed, aided, or abetted the commission of any act for which a license is required by this article;

(5) While licensed under this article, has had such license revoked within the previous (5) years."

Section 7–213 provides that the licensee shall conduct his business only at the address shown on the license and that the licenses are not transferable to another person. Sec. 7–214 requires that the licensee maintain a current list of all employees showing the name and current address of each. The records required by the section are to be kept available and open to inspection by the police department and the licensee is required to report in writing to the police the name of any employee employed by the licensee whose employment has been terminated within 24 hours after such termination.

Section 7–215 sets forth the grounds for revocation of a license. Under this section the director of finance has the authority to revoke a license when:

"(1) The licensee is operating in violation of this article or of any other ordinance or regulation relating to or regulating the licensee's business, and has failed or refused to cease and desist from such violation within five (5) days after notice to do so from the director of finance.

(2) The licensee or its managing agent has been convicted, since the license was issued, of any of the offenses described in section 7–212 of this article.

(3) The licensee or its managing agent has knowingly made false or misleading statements of material fact in the application for the license required by this article, or has entered or given false information in any record or report required by this article to be kept or made by a licensee."

Before a license can be revoked Sec. 7–216 requires the director of finance to give written notice that a revocation hearing will be held. A record must be kept of all the proceedings including proofs offered and a transcript of testimony. The license cannot be revoked unless the grounds therefor are satisfactorily established by the evidence.

Section 7–217 makes a violation of the provisions of the ordinance a misdemeanor and provides for a fine of not more than $300, or imprisonment for not more than six months or both.

Appellees Bobby J. Wortham and Jack Wortham are the owners of the Miracle Mile Theatre in Tucson, and Habib Caruba is the owner of the Follies Burlesque Theatres. They refused to apply for an adult entertainment license and filed their complaint for declaratory judgment. They stipulated that their establishments fell within the ambit of Ordinance No. 4783.

■ As to the definition of "adult entertainment enterprise", the trial court found that it applied only to "live" forms of entertainment. We agree. We also agree with the trial court's conclusion that nude or partially nude dancing performances are included in the definition of "adult entertainment enterprise" despite exception No. 7 under Sec. 7–208 and with its conclusion that such dancing may be protected by the First Amendment. See *Doran v. Salem Inn, Inc.*, 422 U.S. 922, 95 S.Ct. 2561, 45 L.Ed.2d 648 (1975); *Attwood v. Purcell*, 402 F.Supp. 231 (D.C.Ariz.1975); *San Juan Liquors v. Consolidated City of Jacksonville*, 480 F.Supp. 151 (D.C.Fla.1979) and see concurring opinion of Justice Cameron in *State v. Gates*, 118 Ariz. 357, 576 P.2d 1357 (1978).

■ Since a protected First Amendment activity is subject to the licensing requirements, the ordinance which authorizes the director of finance to license such protected conduct must set forth definite, objective guidelines for the issuance of such

licenses. *Staub v. City of Baxley*, 355 U.S. 313, 78 S.Ct. 277, 2 L.Ed.2d 302 (1958); *Schneider v. State of New Jersey*, 308 U.S. 147, 60 S.Ct. 146, 84 L.Ed. 155 (1939); and see authorities set forth in *Perrine v. Municipal Court East L. A. Judicial District of L. A. County*, 5 Cal.3d 656, 97 Cal.Rptr. 320, 322–323, 488 P.2d 648 at 650–51 (1971). A licensing ordinance impinging on First Amendment rights which gives the licensing authority broad discretion to refuse a permit is an unconstitutional prior restraint of those rights. *Shuttlesworth v. Birmingham*, 394 U.S. 147, 89 S.Ct. 935, 22 L.Ed.2d 162 (1969); *Kunz v. People of State of New York*, 340 U.S. 290, 71 S.Ct. 312, 95 L.Ed. 280 (1951); *Largent v. State of Texas*, 318 U.S. 418, 63 S.Ct. 667, 87 L.Ed. 873 (1943); *Cantwell v. State of Connecticut*, 310 U.S. 296, 60 S.Ct. 900, 84 L.Ed. 1213 (1940). Correspondingly, an ordinance which permits discretionary revocation of such a license must be invalidated. *Strasser v. Doorley*, 432 F.2d 567 (1st Cir. 1970).

■ Section 7–212(3) states that no adult entertainment license shall be issued or renewed if the applicant "... knowingly made any false statement in his application." In *Cantwell v. State of Connecticut*, supra, the court held invalid an act which proscribed the solicitation of money or any valuable thing for "any alleged religious, charitable or philanthropic cause" unless that cause was approved by the secretary of the public welfare council. The elements of the prior restraint were clearly set forth:

"It will be noted, however, that the Act requires an application to the secretary of the public welfare council of the State; that he is empowered to determine whether the cause is a religious one, and that the issue of a certificate depends upon his affirmative action. If he finds that the cause is not that of religion, to solicit for it becomes a crime. He is not

to issue a certificate as a matter of course. *His decision to issue or refuse it involves appraisal of facts, the exercise of judgment, and the formation of an opinion.*" (Emphasis added) Id. at 305.

We believe Sec. 7–212(3) suffers from the same infirmity. Whether or not a false statement has been *knowingly* made involves the appraisal of facts, the exercise of judgment and the formation of an opinion. We do not find the remainder of Sec. 7–212 to be constitutionally infirm.

■ Sec. 7–215 states that the director of finance "... shall have the authority to revoke a license ..." and then sets forth when he has such authority. Since the director is merely given the power to revoke but is not required to do so, it is a discretionary power and Sec. 7–215 is unconstitutional. *Strasser v. Doorley*, supra.

Appellees have also attacked the constitutionality of the procedure for reviewing license revocation. Since we have found 7–215 unconstitutional, this issue is moot.[1]

■ Appellees also contend that Sec. 7–209, which prohibits the operation of an adult entertainment enterprise on the same premises as certain other businesses, is an unconstitutional prior restraint of First Amendment rights, a denial of equal protection because it lacks a rational basis, and an unconstitutional classification based on content. The ordinance has only a slight and neutral effect on unprotected speech. It regulates the place where the adult entertainment enterprise can operate but neither approves nor disapproves of the content of the activities taking place thereon. Cf. *Young v. American Mini Theaters, Inc.*, 427 U.S. 50, 96 S.Ct. 2440, 49 L.Ed.2d 310 (1976); *Northend Cinema, Inc. v. City of Seattle*, 90 Wash.2d 709, 585 P.2d 1153

---

1. Appellees rely on *Freedman v. State of Maryland*, 380 U.S. 51, 85 S.Ct. 734, 13 L.Ed.2d 649 (1965) and *Southeastern Promotions Ltd. v. Conrad*, 420 U.S. 546, 95 S.Ct. 1239, 43 L.Ed.2d 448 (1975) in their attack on the procedure. We note that these cases involved the necessity for *expedited judicial review of a governmental* determination that certain material was obscene. That is not involved here. For cases distinguishing *Freedman v. State of Maryland*, supra, see *Universal Amusement Co., Inc. v. Vance*, 559 F.2d 1286, 1293 (5th Cir. 1977) and *Bayside Enterprises, Inc. v. Carson*, 470 F.Supp. 1140, 1149 (D.C.Fla.1979).

(1978).[2] However, whether there is a rational basis for the prohibitions of Sec. 7–209 still remains as a factual issue and cannot be disposed of on summary judgment.

 Finally, appellees challenge that part of the ordinance which disqualifies them from having a license if they have been convicted of certain crimes.[3] Appellants contend that appellees have no standing to question this provision because they have not alleged that they have been convicted of any of those crimes. We agree with appellants and believe the language in *Bayside Enterprises, Inc. v. Carson*, 450 F.Supp. 696 (D.C.Fla.1978) which involved a similar ordinance, best sets forth the reasons:

> "In the Court's view, these portions of the Code may raise questions of constitutional significance in an appropriate case. In light of the present grounds for the plaintiffs' attack on these provisions, however, it is unnecessary for the Court to consider such questions at this time. The plaintiffs have not alleged, and the Court has no reason to assume, that these provisions will bar these particular plaintiffs from obtaining a license under the Code. And unlike other portions of the Code previously discussed, these provisions are not at all vague or indefinite. Thus there is no threat of a subjective 'chill' in connection with the plaintiffs' exercise of their first amendment rights due to the operation of these particular Code provisions. Accordingly, the somewhat relaxed standing rules which govern first amendment adjudication of vague statutes are inoperative in this particular aspect of the case. Without a definite indication that these plaintiffs will be deprived of their first amendment rights in this connection, this Court will not allow them to challenge the Code provisions in question." Id. at 709.

2. On the subject of the validity of "war zone" ordinances restricting the location of sex-oriented businesses see, 1 A.L.R. 4th p. 1297 et seq.

The judgment is reversed and remanded for further proceedings.

HATHAWAY, C. J., and RICHMOND, J., concur.